# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

| | |
|---|---|
| LOCAL ACCESS LLC,<br><br>   *Plaintiff, Counterclaim-*<br>   *Defendant,*<br><br>v.<br><br>PEERLESS NETWORK, INC.<br><br>   *Defendant, Counterclaim-*<br>   *Plaintiff.* | Civil Action No.<br><br>6:17-cv-00236-WWB-EJK<br><br>**DEMAND FOR A JURY TRIAL** |

**SURREPLY IN OPPOSITION TO LOCAL ACCESS'S SUPPLEMENTAL BRIEFING ON ATTORNEYS' FEES, COSTS AND OTHER LEGAL EXPENSES**

**TABLE OF CONTENTS**

|  |  |  | **Page** |
|---|---|---|---|
| ARGUMENT | | | 2 |
| I. | | 6,284.9 Hours to Litigate a Sanctions Motion is Patently Excessive | 2 |
| | A. | The Material Facts Relevant to the Court's Orders Were Known after Initial Briefing | 2 |
| | B. | Time Spent Litigating the Underlying Case or Local Access's Breaches of the Protective Order is not Recoverable | 4 |
| | C. | Time Spent Litigating the Withdrawn Damages Claim is Not Recoverable | 4 |
| | D. | The Number of Docket Entries is Irrelevant to an Assessment of Reasonable Hours | 5 |
| | E. | The Time Entries are Rife with Block Billing and Vague Descriptions | 6 |
| | F. | Local Access Cannot Manufacture Distinct Contributions by Splitting Up Tasks that Could be Handled by One Attorney and Billing for Multiple Attorneys to Complete That Task | 6 |
| | G. | The Court Should Adopt Peerless and Kelley Drye's Analysis | 9 |
| II. | | Local Access's Time Spent since the Report and Recommendation is Excessive | 10 |
| III. | | At a Maximum, the Court Should Apply Local Access's "Blended Rate" of $325 as the Reasonable Hourly Rate for Attorneys | 11 |
| IV. | | Mr. Finneran is Not a Paralegal and his Time Spent Litigating as an Officer and Corporate Representative of Local Access and Owner of Blitz is Not Recoverable | 13 |
| V. | | Local Access Concedes that Most of its Claimed Costs Relate to the Underlying Litigation or Are Duplicative | 14 |
| VI. | | Local Access and its Affiliates are not Entitled to a Windfall | 15 |
| CONCLUSION | | | 15 |

Kelley Drye has agreed that Local Access should be awarded its reasonable fees and costs incurred in investigating and prosecuting the Sanctions Motion against the firm, and did not object to this recommendation in Magistrate Judge Smith's June 2019 Report and Recommendation. Although Local Access now admits that its first iteration of its sworn-to fee petition filed in March 2020 included $138,593.92 of fees to which it was not entitled, Local Access continues to seek recovery for a patently unreasonable 6,284 hours of time, or $2,443,992.80 in fees and costs, to litigate sanctions motions where no compensatory harm to Local Access was at issue, the salient facts were known from the beginning, and the primary consideration for the Court's determination was the appropriate sanction for conduct that had been disclosed.

Examples of Local Access's excessiveness in its revised fee petition abound. Local Access and its expert Mr. Thielhelm now try to re-cast Local Access's corporate representative and officer, Mr. Finneran, as a "paralegal," to collect an astronomical $389,647.19 in "litigation support" time he allegedly spent on his own companies' behalf. Local Access also now adds an additional $98,241 in fees and $99,887 in supposed expert witness time (cost) to prepare the fee petition, much of which was incurred after June 29, 2020, and are not assessable to Kelley Drye pursuant to Judge Berger's Order. ECF 703 at 21. Local Access seeks to collect almost $100,000 to have Mr. Thielhelm re-subdivide Local Access's attorneys' time entries into 21 "phases," and then provide a rubber stamp opinion that every single one of the 6,284.9 hours spent by such attorneys was reasonable. This "phases" analysis (ECF 705-2 at 29), however, cannot disguise that Local Access still seeks to recover patently excessive amounts of time, such as:

- 152.6 hours to "address whether the sanctions motion against Peerless should be determined through briefing or evidentiary hearing";
- 151.4 hours for "communications with Kelley Drye";
- 246.7 hours to draft the 37 pages on the motions for sanctions;
- 1,061.5 hours for 13 depositions (including 201 hours for 1) that took 64 hours of time; and
- 226.9 hours to prepare for a show cause hearing against Peerless **that never happened**.

*See* Ex. 1, Suppl. Expert Report of Walter Ketcham ("Ketcham Suppl. Rpt.") at 3-4. Local Access has failed to carry its burden that its fees and costs are reasonable and within the Court's Order. The Court should adopt Kelley Drye and Peerless's proposal as to the lodestar (ECF 693 at 13-14), which taking into account the Court's June 29, 2020 Order, is no more than $147,810.

Local Access also continues to improperly seek to recover costs and fees from Kelley Drye that were directly attributable to litigating its sanctions motion against Peerless. ECF 705 at 10. In this regard, the Court should defer ruling on Local Access's petition for fees until it has resolved the pending Motion for Sanctions against Peerless (ECF 229). Magistrate Judge Smith's Report and Recommendation states that "[a]s Local Access' request for the imposition of sanctions against Peerless remains outstanding, I further recommend that any motion for attorney's fees and legal expenses pursuant to this recommendation (if adopted) be deferred until the conclusion of those proceedings." (ECF 609 at 35.) Judger Berger adopted this recommendation. ECF 703 at 20.

## ARGUMENT

### I.  6,284.9 Hours to Litigate a Sanctions Motion is Patently Excessive

#### A.  The Material Facts Relevant to the Court's Orders Were Known after Initial Briefing

While Local Access alleges it did not know certain facts before discovery, it fails to identify any important ones that required over 6,280 hours to discover and litigate. Instead, Local Access focuses on the parties' arguments over the legal conclusions to draw from the known facts. But the material facts that the Court relied on for its legal rulings were known prior to the discovery phase of the sanctions motion against Kelley Drye, namely:

- On May 16, 2018, Kelley Drye notified Local Access that it had transmitted the 1/30 production to Peerless (ECF 188-2);

- On May 25, 2018, Kelley Drye notified Local Access that a subset of confidential customer name information transmitted to Peerless for the purposes of litigation was used for marketing (ECF 188-1; 229-17);

- On June 1, 2018, Kelley Drye notified the Court of the disclosures (ECF 188);

- On June 21, 2018, Local Access filed its Motions for Sanctions against Peerless and KDW, which block quoted the May 7 email, and argued that it was "intentionally deceptive" (ECF 229 at 10, n.7); and

- On July 9, 2018, Peerless and Kelley Drye filed their Responses to the Motions, which included lengthy declarations from Mr. Kelly, Ms. James and Ms. McElmury, and confirmed that Kelley Drye had learned of the disclosure of the 1/30 Production on April 12, 2018.

ECF 703 at 5-10; *see also* Exhibit 2 hereto (list of findings by the Court and the date disclosed by Peerless and Kelley Drye.) In their findings of fact, both Magistrate Judge Smith and Judge Berger quote at length from the three declarations filed by Kelley Drye in July 2018. *Id* at 4-7. The content of the May 7 email, the timing of the discovery of the disclosures, and the timing and content of the notice provided to Local Access and the Court were all known by July 9, 2018 – before any discovery.

Local Access avers that Kelley Drye continued to misrepresent facts (ECF 705-11), but that self-serving allegation fails to contain an example of a false statement, let alone a material one. Instead, it is a collection of inconsequential arguments. *See* Exhibit 3 hereto (responses to the supposed "misrepresentations" claimed by Local Access in ECF 705-11.) Similarly, the attorney declarations attached to Local Access's Reply (ECF 705-3, 705-4 and 705-6) are teeming with belated, immaterial argument and misstatements in a vain attempt to justify and distract from the excessiveness of the fees sought. *See* Exhibit 4 hereto (outlining examples of misstatements in the declarations of Mr. Marcus, Mr. Myers, and Mr. Sellman). Local Access cannot point to a single material fact that was relevant to the Court's Order that necessitated even 1, let alone 13 depositions.[1] But that is beside the point, because Kelley Drye has agreed that Local Access should be compensated for a reasonable

---

[1] Local Access misleadingly argues that Kelley Drye contended that months of discovery was necessary to understand that the 1/30 production was not used for marketing purposes. This is simply untrue. *See* ECF 705-2 at 23-24. Kelley Drye informed Local Access on May 16, 2018 that the production was not used for marketing purposes, and argued that that timing was not unreasonable in light of the need to investigate and understand the facts. The Court disagreed with that argument.

3

amount of time for all 13 depositions, written discovery, telephonic conferences, in person discovery conferences and hearings, and the evidentiary hearing. (ECF 693 at 13-14.) Local Access's claim that 6,284.9 hours was reasonable is unsupported by a single case, defies common sense, and is an unlawful attempt to punish Kelley Drye rather than collect the reasonable lodestar fees. *Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999).

### B. Time Spent Litigating the Underlying Case or Local Access's Breaches of the Protective Order is not Recoverable

In its response to Local Access's original fee petition, Kelley Drye objected to individual line entries (ECF 693-7) that were unrelated "to the investigation and the prosecution of the Sanctions Motion against the firm." (ECF 703 at 21), but which, on their face are related to prosecution of the underlying action. Local Access now admits (ECF 705 at 15) that its original petition sought recovery of over $138,000 of fees that were related to the underlying action, and withdraws those fees from the motion. Yet, Local Access's Reply continues to seek recovery for time that clearly relates to the underlying proceeding because Local Access says, without evidence, that they were incurred because of the violations of the Protective Order. ECF 705 at 12. The lone examples Local Access posits - that the addition of Blitz and issuance of third party subpoenas was so-called fruit of the poisonous tree – are misplaced. Before any analysis of the 1/30 production, Local Access's Confidential 12/20 production demonstrated that Blitz and Local Access received Peerless's customers and it was that discovery that led to those efforts. ECF 582 C. James Dep. Tr. 116:3-23. Time spent litigating Blitz as a party and third party subpoenas is not related to the investigation, discovery of the violation or the prosecution of the sanctions motions, and are not recoverable under the Court's Order or the law. *See Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1187 (2017).

### C. Time Spent Litigating the Withdrawn Damages Claim is Not Recoverable

Local Access's Reply again attempts to rewrite history when it comes to their withdrawn damages claims by now claiming incredibly that Kelley Drye caused them to seek such damages. ECF

4

705 at 15. As Kelley Drye demonstrated, Local Access sought these damages from the beginning. ECF 693 at 9. Magistrate Judge Smith told Local Access at the first hearing that damages would entail discovery of its customers (7/11/2018 Tr. 43:4-23), repeatedly advised Local Access that it would have to disclose customer information to pursue damages, and as early as August 2018 recognized that Local Access's refusal to support its claims of economic harm was creating a "log jam." 8/10/2018 Tr. 17:1 – 18:14; ECF 298. Although Local Access assured the Court that it would produce evidence to support its damages (9/7/2018 Tr. at 98:15-17), it ultimately withdrew its claims to evade being sanctioned by the Court. 10/19/2018 Tr. 8:18-9:17, 12:4-7 ("my recollection is consistent with [Peerless's counsel's] that an awful lot of this discovery has been talked about and I've said that it needs to be produced."); ECF 529; ECF 693 at 10. Local Access even attempted to have Mr. Malfara testify at the March 2019 show cause hearing on the harm caused to Local Access without having provided prior supporting facts; but this effort was cut off by Magistrate Judge Smith. 3/26/2018 Tr. 176:7-177:8. Local Access provides no explanation why it took it six months to decide that it would abandon its damage claim. In any event, Local Access created substantial delay in these proceedings, and the time and expense spent on litigating the withdrawn and unproven claim of economic harm, including related discovery, court conferences, the court-authorized motion for sanctions against Local Access, Peerless's motions to Compel, Mr. Mafara's costs, and motion for Clarification are not recoverable.[2] *See also* Ex. 1 (Ketcham Suppl. Rpt) at 7.

### D. Docket Entries is Irrelevant to an Assessment of Reasonable Hours

The Reply cites the number of docket entries in this case as evidence that over 6,280 hours was reasonable by comparing the 420 docket entries in this sanctions proceeding to the 282 docket

---

[2] Phase 10 of Local Access's expert report claims to identify the hours associated with motions filed by KDW on behalf of Peerless, however, the exhibits that claim to identify these hours (ECF 705-2, Ex. J at p. 154 to 167) is a duplicate of Exhibit I (Phase 9). There is no chart of hours for Phase 10. Therefore, the Court should deny any reimbursement for Phase 10, and deduct 298.8 hours from any lodestar calculation for this reason alone.

entries in Peerless's litigation against MCI. ECF 705 at 5-6. The comparison between that case and the instant matter merely demonstrates how unreasonable and disproportionate Local Access's fee petition is. That case was litigated for almost four years through and including summary judgment, including a preliminary injunction hearing and expert discovery. Notably different from the instant case where not a single dollar was at issue, in the MCI litigation the Court issued a judgment in Peerless's favor in the amount of $48,456,131.66. (MCI ECF 271.)

### E.     The Time Entries are Rife with Block Billing and Vague Descriptions

Local Access next complains that Kelley Drye and Peerless did not object to their time entries with sufficient particularity (ECF 705 at 7), even though Kelley Drye and Peerless objected to each time entry with a specific objection(s). ECF 693-5. Local Access also fails to meaningfully address Kelley Drye's argument that their "block-billed" or vague entries are not recoverable. ECF 693 at 8-9, 13. "While attorneys cannot be expected to account for every second of their time, they should be expected to explain in discrete entries the nature of the work that they want a client or opposing party to pay them hundreds of dollars to perform." *Kearney v. Auto-Owners Ins. Co.*, 713 F. Supp. 2d 1369, 1378 (M.D. Fla. 2010). All entries therefore from Peerless/Kelley Drye's Opposition Exs. 8 and 12 (ECF 693-8, 693-12) should be excluded from the lodestar. *See also* Ex. 1, (Ketcham Suppl. Rpt.) at 3.

### F.     Local Access Cannot Manufacture Distinct Contributions by Splitting Up Tasks that Could be Handled by One Attorney and Billing for Multiple Attorneys to Complete That Task

Local Access claims that its excessive billing for multiple attorneys to prepare for and attend proceedings or depositions, or to draft the same briefs or filings, is permissible because Local Access had a practice of splitting each task into sub-tasks, and then billing (an excessive amount) for each attorney to complete the entire task or prepare for and attend the entire proceeding. ECF 705 at 16. This is not what the case law means when it refers to the "distinct contribution" of multiple attorneys. *See James v. Wash Depot Holdings, Inc.,* 489 F. Supp. 2d 1341, 1349 (S.D. Fla. 2007) (courts must deduct

6

unnecessary duplication of effort, including two attorneys at depositions). But even if it was, Local Access has not carried its burden because neither the time entries nor the attorney declarations show any "distinct contribution" by the multiple attorneys billing for the same task. For example, just a few of the time entries relating to the January 2020 hearing on the motion for sanctions against Peerless show that there is no effort to demonstrate the "distinct contribution" each made to the proceeding:

| Date | Marcus Time Entry | Myers Time Entry | Sellman Time Entry |
| --- | --- | --- | --- |
| 1/13/20 | Prepare for oral argument on 1/15; Work with BR, JF and LA counsel and independently for same | Prepare for hearing on PN sanctions motion, including all-day meeting with LA team | Travel to Orlando; all day meetings and prep for hearing |
| 1/14/20 | Prepare for oral argument on 1/15; Work with BR, JF and LA counsel and independently for same | Continue to prepare for hearing on PN sanction motion, including all-day meeting with LA team | Preparation for hearing: all day preparing various arguments depending on what Judge Kidd wanted to have argued. Allocated tasks, and worked with each other throughout the day |
| 1/15/20 | Prepare for and attend oral argument on closing briefs for PN sanctions | Prepare all morning for and attend hearing on PN sanctions motion | Morning preparation for hearing; attend hearing before Judge Kidd; travel to Baltimore |

All told, Mr. Marcus billed 50.5 hours, Mr. Myers billed 41.5 hours, and Mr. Sellman billed 36.3 hours to prepare for and attend that 2 hour hearing. Local Access chose to have Mr. Marcus argue on opening, and Mr. Sellman on reply, but there is no evident reason why such a short hearing needed to be split between two lawyers. What's more, their time entries do not reveal an appropriate amount of time to prepare for such discrete tasks – both prepared as if they were arguing the entire hearing, and then quite a bit more. Mr. Myers, who billed an entire week's worth of work, did not speak at all except to figure out how to turn on the ELMO. Neither the record nor the time entries demonstrate a "distinct contribution." Any of three, who by this time had already billed thousands of hours litigating and briefing these issues, should have been capable of preparing for and arguing the hearing, without

7

the need for two other attorneys to perform exactly the same work. And they should have been able to do so in substantially less time than any of them billed. *See* Ex. 4 hereto at p. 6-7 (noting that Mr. Marcus and Mr. Myers both attended the depositions of Ms. McNerney and Ms. McElmury and provided no distinct contribution.)

This is just one example; the records are replete with excessive and duplicative billing. *See* ECF 693-6 (activity by timekeeper.) The attorney declarations attempt to backfill "distinct contributions" by, for example, arguing that Kelley Drye also had several attorneys attend hearings or depositions. But they actually make the point that this duplication was not only unnecessary, but highly excessive. *See* Ex. 1 (Ketcham Suppl. Rpt.) at 7-9; Ex. 4 at 8. For example, Mr. Marcus claims that he and Mr. Meyers - two self-described senior attorneys with a combined 54 years of litigation experience in the Eleventh Circuit and the Supreme Court - were necessary at depositions of even junior Peerless employees so that one could ask questions while the other could "address legal issues that arose and hold opposing counsel accountable to the record." *See, e.g.,* ECF 705-3 at 14, 17. Far from being evidence of a "distinct contribution," it's evidence that Local Access's fee request is excessive because most attorneys, even junior ones, are capable of asking questions and addressing legal or factual disputes that may arise in a deposition. *Duckworth v. Whisenant*, 97 F.3d 1393, 1398 (11th Cir. 1996) (deducting time spent for two attorneys to attend every deposition in the case.) Local Access tries to justify its excessive duplication by speculating how many attorneys representing Kelley Drye and Peerless were billing time during hearings and depositions. ECF 705-6. But this speculation is not only irrelevant, it fails to account for the fact that often such "attorneys" at a hearing or deposition were testifying, representing different parties, or barred by the Court from being an advocate. *See* Ex. 4 at 8; Ex. 5 (parties represented at depositions).) "The time expended by opposing counsel is seldom relevant to a determination of hours reasonably expended. . . ." *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1306 n.3 (11th Cir. 1988).

8

Even if splitting tasks was necessary, the time entries reveal that each attorney prepared for every activity as if they were handling the entire event themselves (and then some). *Shipping & Transit, LLC v. 1A Auto, Inc.*, 283 F. Supp. 3d 1290, 1305 (S.D. Fla. 2017) ("although there is nothing inherently unreasonable about a client having multiple attorneys during conferences, each individual should be compensated only for the individual's distinct contribution.") (internal citation omitted.)[3] Indeed, in almost every case, attorneys billed time to prepare for depositions that they didn't even attend, let alone take. *Compare* ECF 705-12 (Deposition by Timekeeper) *with* ECF 705-13.[4] This is the definition of redundant and excessive billing.

### G. The Court Should Adopt Peerless and Kelley Drye's Analysis

Local Access's expert concluded that every single one of the over 6,280 hours spent were reasonable and necessary, and charged almost $100,000 to do so. But the Court's findings of facts demonstrates that there were not 21 phases of the sanctions motions, and Mr. Thielhelm's effort to slice the pie in to small pieces so that each piece seems reasonable, does not make the 6,280 hours any less unreasonable. This costly rubber stamp of Local Access's patently excessive time records is not helpful to the Court, and should be rejected on this basis alone. Kelley Drye and Peerless's reasonable hours chart (ECF 693 at 13-14) does award Local Access time for each activity that was related to the sanctions motions, including every deposition, hearing and pleading, except those related to the withdrawn claim for damages, it just recommended the *reasonable* amount of time to complete each

---

[3] Mr. Meyers' billing over 40 hours to prepare for and attend a hearing where he did not speak is the rule, not the exception. Similarly, Mr. Sellman billed 45.5 hours, and Ms. Cohen billed 23.6 hours, to prepare for and attend the July 11, 2018 Hearing, which lasted about four hours and at which neither substantively spoke. Ms. Cohen billed 37.5 hours to prepare for and attend the all-day hearing on September 7, 2018, during which she spoke a handful of times. Mr. Sellman billed 91.6 hours to examine witnesses for less than three hours at the March 2019 evidentiary hearing, while Mr. Myers billed 129.9 hours to deliver the evidentiary hearing's short opening statement, and Mr. Marcus billed 126.3 hours to examine one witness. This is a pattern. ECF 693-6 (activity by timekeeper.)

[4] Local Access's Exhibit 12 is misleading. Local Access admits it billed 1061.5 hours for 13 depositions (ECF 705-2 at 29-30) that lasted about 64 hours; far more than 99 hours listed on ECF 705-12.

9

activity, without getting into any dispute as to whether such an activity was truly necessary in light of the known facts. The Court therefore should adopt the reasonable number of hours contained in Peerless and Kelley Drye's Response for a total of 404.8 hours, which is well supported by the record and the law.

## II. Local Access's Time Spent since the Report and Recommendation is Excessive

The fees sought by Local Access since the Report and Recommendation are either unreasonable or not compensable. For instance, while Local Access is entitled to its reasonable fees incurred in preparing and filing its Objections to the R&R, the 98.8 hours they seek is unreasonable. Ex. 1 (Ketcham Suppl. Rpt.) at 9. Rather, given that the objections involved no new facts, and well over 100 pages of briefing had already been submitted by Local Access on these issues, a reasonable amount of time to spend on preparing and filing the objections was 30 hours, for a total number of reasonable hours of 434.8. Peerless and Kelley Drye also object to awarding Local Access any additional time for Mr. Knight's second deposition, as the original 404.8 hours already accounted for that deposition. ECF 693-10. And Kelley Drye further objects to awarding any time for Local Access's unsuccessful Motion to Supplement the Record, which was baseless and summarily denied.[5]

The Court's June 29, 2020 Order also does not award Local Access its fees incurred in preparing its fee petitions. Judge Berger held that Local Access was only entitled to recover "reasonable attorneys' fees and costs incurred between December 20, 2017, and the date of this Order, which relate to the *investigation and discovery of Kelley Drye's violation of the Protective Order* and the *prosecution*

---

[5] Local Access continues to misleadingly contend that Kelley Drye somehow "hid" the document at issue, which was produced in the same format as other documents at the time due to time constraints between the issuance of the Court's privilege ruling and the pending deposition schedule. This argument has already been rejected by the Court. ECF 674. Missing from their recitation is the fact that Ms. James testified at her deposition that she had taken notes of her conversations with Mr. Knight and that those notes had been produced. *See* ECF 705-4. If Local Access could not locate the notes, it could have asked for the bates numbers and Peerless would have provided that information, which is exactly what happened several months later. ECF 654 at 14.

*of this sanctions Motion.*" (ECF 703 at 21) (emphasis added). The Order directs Local Access to file its fee petition by July 31, after the date that fees were awarded. Thus, the Order does not contemplate an award of fees related to the fee petition. The preparation of the fee petition is not related to the "investigation and discovery of Kelley Drye's violation of the Protective Order" or to the "prosecution of the sanctions motion."

However, if the Court concludes that such fees are recoverable, the 244 hours (and $100,000 for an expert) sought is patently excessive. *See Loranger v. Stierheim,* 10 F.3d 776, 782-83 (11th Cir. 1994) (over 100 hours spent on fee request an example of "patently excessive" expenditure of time where, like here, the trial was only 2.5 days.) Many of the hours are associated with Local Access's efforts to re-file its Motions or correct errors, or make arguments and present evidence it should have presented in the first instance. Peerless and Kelley Drye object to clerical work, work performed by Local Access's corporate representatives, and work relating to the preparation of the motions for extensions of time. *See* Ex. 6 hereto (Objections to Local Access time entries for the period after January 15, 2020.) In addition, the cost of Local Access's expert is unsupported by any time records, and seeks time until July 31, 2020 (contrary to Judge Berger's Order) and thus is not recoverable. Ex. 1 (Ketcham Suppl. Rpt.) at 2. In light of the Supreme Court's admonishment that fee litigation should not become "a 'second major litigation,'" *See Hensley v. Eckerhart*, 461 U.S. 424 (1983), 20 hours for such an effort is more than sufficient, with no additional costs to be awarded.

**III.    At a Maximum, the Court Should Apply Local Access's "Blended Rate" of $325 as the Reasonable Hourly Rate for Attorneys**

Faced with evidence that its attorneys charged it rates of $275-$300 in 2018/2019, Local Access now contends that it agreed to pay its attorneys a premium rate in this case because of its complexity, the substance of the issues, and the all-consuming nature of the litigation. First, considering that the previous case involved the same contract, with the same attorneys, and many of the same issues, this fails to explain why a premium rate of almost double the last case is justified.

11

ECF 693 at 3-4. And while Mr. Marcus and Mr. Myers claim that their retention in this case prevented them from taking on other matters, the record belies this self-serving statement. Both frequently noted their unavailability to the Court during the discovery process because of their engagement on other matters, including preparing for trial in another case. (Nov. 2, 2018 Tr. at 20-25); (Dec. 7, 2018 Tr. at 5:16-20); (Dec. 14, 2018 Tr. at 3:3-13); (Jan. 22, 2019 Tr. at 19:11-20:10).

While Local Access may choose to pay a premium rate, it is not entitled to recover one from its adversary. *See Hermosilla v. Coca-Cola Co.*, No. 10-21418-CIV, 2011 WL 9364952, at *9-11 (S.D. Fla. July 15, 2011), *subsequently aff'd*, 492 F. App'x 73 (11th Cir. 2012) (collecting cases).[6] "Even if a party chooses to employ counsel of unusual skill and experience, the court awards only the fee necessary to secure reasonably competent counsel." *Rosa-Nales v. Carnival Corp.*, No. 12-22172-CIV, 2015 WL 10015262, at *6 (S.D. Fla. June 11, 2015), *report and recommendation adopted*, No. 12-22172-CIV, 2015 WL 6163555 (S.D. Fla. July 28, 2015) (*quoting Orenshtyn v. Citrix Systems, Inc.*, 558 F.Supp.2d 1251, 1257 (S. D. Fla. 2007). Fee awards are meant to provide adequate compensation that is reasonable, irrespective of the skill, reputation or experience of counsel. *Id.* (*citing Norman*, 836 F.2d at 1301).

Local Access primarily relies on Magistrate Judge Kidd's opinion in *Rudakas v. State Farm* to support its rates, but that case is inapposite. First, the defendant in that case did not dispute the hours spent or the rates. Second, the Court approved a rate of $475.00 an hour for 16 hours of time for one senior attorney to prepare for and attend a hearing, a multiple day meeting with the Court, and $100 an hour for 16 hours of paralegal work to assist in preparation. That is distinguishable from here, where multiple attorneys seek a high premium rate to not only perform the same work, but to perform more junior tasks better delegated to less expensive attorneys. *See* Ex. 1 (Ketcham Suppl. Rpt.) at 4-5.

---

[6] The Reply contains conflicting evidence as to whether these bills were actually paid. Mr. Russell's declaration contends (without any documentary support) that they were, while Mr. Marcus and Mr. Myers stick with claiming that Local Access is "responsible" for them, but do not confirm actual payment. Mr. Sellman concedes that not all of his bills have been paid.

12

Legal research, drafting motions and briefs, and similar work "is generally considered to be work that is capable of being performed by more junior attorneys and that should not be billed at partner-level rates." *McConnell v. Am. Gen. Life Ins. Co.*, No. CV 19-0174-WS-MU, 2020 WL 3452983, at *5 (S.D. Ala. June 24, 2020) (internal quotation omitted.) Courts disapprove of "the wasteful use of highly skilled and highly priced talent for matters easily delegable to ... less experienced associates. ... A Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn." *Id.* at *6 (quoting *Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3rd Cir. 1983)).

Local Access attempts to make its claimed rates more palatable by providing the Court with a blended rate of $325. (ECF 705-2 at 27.) This "blended rate" of $325 is the most that should possibly be awarded, particularly because the firms at issue used no junior counsel to delegate more junior tasks such as legal research, fact and cite checking, or initial drafts of briefs. To be clear, however, this blended rate should not apply to work performed by paralegals, clerical personnel, or company representatives such as Mr. Finneran, who, if they are compensated at all, should be compensated at a rate of $100 an hour. Multiplying the reasonable hours by the reasonable rate results in a low end lodestar of $125,940, with a high end of $147,810, depending on whether the Court awards fees for preparing the fee petition and applies a $300 or $325 hourly rate.

### IV.     Mr. Finneran is Not a Paralegal and his Time Spent Litigating as an Officer and Corporate Representative of Local Access and Owner of Blitz is Not Recoverable

Changing tack from its original petition, Local Access now claims that its own officer and corporate representative Mr. Finneran, who is also an owner of co-movant Blitz, served a "paralegal like" function, and claims $389,647.19 "fees" for time Mr. Finneran spent serving as Local Access and Blitz's corporate representative and managing the litigation on Local Access and Blitz's behalf. The effort to turn Mr. Finneran into a paralegal should be rejected. First, Mr. Finneran is not a paralegal. The fact remains that Mr. Finneran is a Local Access Officer and owner of Blitz who was serving throughout this proceeding as Local Access and Blitz's corporate representative *See* Ex. 1 (Ketcham

Suppl. Rpt.) at 7. As an Officer of Local Access Mr. Finneran analyzes data, the very same work for which Local Access now seeks to charge Peerless and Kelley Drye for. 3/26/2019 Tr. 182:5-814:1. Paralegal time is recoverable "only to the extent that the paralegal performs work traditionally done by an attorney." *Jean v. Nelson*, 863 F.2d 759, 778 (11th Cir. 1988). Local Access, Blitz, their owners, and officers are not entitled to be paid for litigating, and Local Access has not cited a single case in support of its claim.[7]

## V. Local Access Concedes that Most of its Claimed Costs Relate to the Underlying Litigation or Are Duplicative

The Reply concedes that the vast majority of "Lexbe" costs are related to the underlying case, and makes no effort to parse out any amount related solely to the sanctions motion. ECF 705-6 at 18. The same is true for the CDR storage costs. Local Access argues that the full amount of these costs are recoverable, even though they are not related to the sanctions motion, because they would have not been paid "but for" the sanctions proceedings; a dubious claim that has no support in the record. Even more importantly, that is not the standard – the Court only awarded Local Access its costs and fees incurred in the prosecution of the Sanctions Motions. Not only are these amounts grossly excessive, the fact that Local Access has not made any attempt to segregate costs specifically related to the sanctions motion means that the entire amount must be denied. *Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999). Similarly, Local Access concedes that it seeks to recover duplicative transcript costs, but leaves it to the Court to parse out which transcript orders were duplicative. ECF 705-6 at 19. Local Access cannot shift its burden, and accordingly all transcript costs should be denied for failure to meet that burden. The Court should grant Local Access its reasonable costs incurred in the prosecution of the sanctions motion, which at most totals $13,693.65.

---

[7] In its original petition, the only invoices provided for Mr. Finneran were for "litigation support." In Reply, time records for Mr. Finneran suddenly materialized. It is inappropriate to submit this evidence for the first time on Reply, and the Court should disregard it. In the event the Court does consider Mr. Finneran's new time entries, attached hereto as Exhibit 7 are specific objections thereto.

**VI.     Local Access and its Affiliates are not Entitled to a Windfall**

Mr. Russell's declaration (ECF 705-8) represents an improper attempt to tie the Court's hand in determining a reasonable attorney's fee – claiming that because Local Access allegedly spent these amounts the Court must award or them or else risk punishing Local Access for Kelley Drye's mistakes. But this is circular logic; a dollar was not reasonably spent simply by virtue of having been spent in the first place, and a fee award is intended to *fairly* compensate Local Access, not provide a means by which Local Access can punish Kelley Drye by racking up the bills. *Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d at 428 ("[c]ourts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded.").

## CONCLUSION

While Kelley Drye and Peerless agree that Local Access is entitled to its attorneys' fees brought in prosecuting the Motion, those fees must be reasonable and proportional to the issues presented and the outcome. Local Access cannot manufacture proportionality by egregiously overbilling and over litigating the issues, and then claiming that the over-billing is in itself evidence that such an extraordinary amount of time was in fact necessary to prosecute the Motion. A reasonable lodestar amount of fees is in the range of $125,940, with a high end of $147,810, and the Court would be well within its discretion to adjust that amount downward in light of the fact that much of the substantive relief requested was denied.

Dated: September 11, 2020    /s/ Henry T. Kelly
**PEERLESS NETWORK, INC.**

Henry T. Kelly (*pro hac vice* admitted)
Catherine E. James (*pro hac vice* admitted)
Kelley Drye & Warren LLP
333 W. Wacker Drive, Ste. 2600
Chicago, Illinois 60606
(312) 857-2350
hkelly@kelleydrye.com

15

cjames@kelleydrye.com

Dennis O'Connor
Yvette Pace
O'Connor & O'Connor, LLC
800 North Magnolia Avenue, Ste 1350
Orlando, FL. 32803
(407) 843-2100
(407) 843-2061 Facsimile
DOConnor@oconlaw.com
YPace@oconlaw.com

*Attorneys for Defendant Peerless Network, Inc.*

### CERTIFICATE OF SERVICE

The undersigned, an attorney of record, hereby certifies that he caused copies of the foregoing **SURREPLY IN OPPOSITION TO LOCAL ACCESS' SUPPLEMENTAL BRIEFING ON ATTORNEYS' FEES, COSTS AND OTHER LEGAL EXPENSES** to be served upon all counsel of record via the Clerk of the Court's CM/ECF system on this 11th day of September, 2020.

Dated: September 11, 2020     /s/ Henry T. Kelly


# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

LOCAL ACCESS LLC,

    *Plaintiff, Counterclaim Defendant,*

  v.

PEERLESS NETWORK, INC.

    *Defendant, Counterclaim Plaintiff.*

Civil Action No. 6:17-cv-00236-WWB-EJK

**DEMAND FOR A JURY TRIAL**

## INDEX TO EXHIBITS

Exhibit 1. Supplement To Expert Opinion of Walter Ketcham

Exhibit 2. Chart of findings by the Court and date disclosed

Exhibit 3. Response to ECF 705-11

Exhibit 4. Response to Attorney Declarations ECF 705-3, 705-4 and 705-6

Exhibit 5. Schedule of parties represented at depositions

Exhibit 6. Objections to Local Access time entries since 1-15-2020

Exhibit 7. Objections to J. Finneran time entries