**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**LOCAL ACCESS, LLC,**

        **Plaintiff,**

**v.**                                      **Case No:   6:17-cv-236-Orl-78EJK**

**PEERLESS NETWORK, INC.,**

        **Defendant.**

_____/

**ORDER**

This cause comes before the Court on the following:

1. Local Access, LLC's ("Local Access") Supplemental Briefing on Attorneys' Fees, Costs, and Other Legal Expenses Incurred as a Result of Kelley Drye and Warren, LLP's ("Kelley Drye") and Peerless Network, Inc.'s ("Peerless") Violations of the Protective Order Governing the Production of Discovery Material (Doc. 683), and exhibits in support of same (Doc. 690) (the "Motion");

2. Peerless and Kelley Drye's Response in Opposition to Local Access's Supplemental Briefing on Attorneys' Fees, Costs and Other Legal Expenses (Doc. 693) [1] (the "Response");

3. Local Access's Motion for Attorneys' Fees, Costs and Other Legal Expenses Incurred as a Result of Violations of the Protective Order Governing the Production of Discovery Material, and Reply Briefing Regarding the Same (the "Reply")[2] (Doc. 705); and

---

[1] Exhibit B to the Response is amended at Docket Entry 695.
[2] Exhibit 1 to the Reply is amended at Docket Entry 707. Exhibit J to Exhibit 2 to the Reply was inadvertently omitted and was filed at Docket Entry 720.

4. Peerless and Kelley Drye's Surreply in Opposition to Local Access' sSupplemental Briefing on Attorneys' Fees, Costs and Other Legal Expenses (the "Surreply") (Doc. 717.)

Upon consideration, I respectfully recommend that the Court order Kelley Drye to pay Local Access's attorneys' fees in the amount of $1,419,772.00 and costs in the amount of $76,960.84.

## I.   BACKGROUND

### A.  Generally

The parties in this case share a contentious litigation history, and this nearly two-year sanctions dispute is only a small part of their larger dispute. Pertinent to the present matter, the Court stayed the merits portion of this litigation when Local Access alleged that Peerless and its counsel, attorneys with the law firm of Kelley Drye, violated the terms of the Court's Protective Order (Doc. 44). The previous presiding Magistrate Judge, the Honorable Thomas B. Smith, allowed the parties to engage in discovery to determine whether Peerless and Kelley Drye should be sanctioned, and if so, to determine the extent of those sanctions.

On June 29, 2020, the Court awarded Local Access "its reasonable attorneys' fees and costs incurred between December 20, 2017,[3] and the date of th[e] Order, which relate to the investigation and discovery of Kelley Drye's violation of the Protective Order and the prosecution of th[e] sanctions Motion," to be paid solely by Kelley Drye. (Doc. 703 at 21 (internal footnote added).)[4] The matter has been referred to the undersigned to recommend an appropriate fees and costs award,

---

[3] It was on December 20, 2017 that "Local Access (through counsel) produced to Kelley Drye a set of CDRs identified as "LA_0001865–CONFIDENTIAL.zip." and designated as "Confidential" under the terms of the Protective Order (the "12/20/17 Production")." (Doc. 703 at 4) (internal quotation marks omitted).

[4] A Report and Recommendation regarding recommended sanctions against Peerless is being issued by the undersigned separately.

and the parties have submitted thousands of pages of briefing, supporting declarations, and exhibits.

### B.  The Motion

On March 13, 2020, Local Access filed its initial Motion for an award of attorneys' fees and costs, as it had been directed to do by the undersigned (Doc. 683), and Peerless and Kelley Drye responded to the Motion (Doc. 693). Prior to the Motion becoming ripe, the Court issued its Order dated June 29, 2020, awarding Local Access its attorneys' fees and costs. (Doc. 703.) Following entry of the Court's Order, Local Access supplemented its Motion by way of a reply brief (Doc. 705), and Peerless and Kelley Drye filed a surreply (Doc. 717). In total, Local Access seeks an award of $**1,670,320.00** in attorneys' fees and **$773,602.80** in costs and other litigation expenses, for a total award of **$2,443,922.80**. (Doc. 707-1 at 1–2.)[5]

## II.    DISCUSSION

Local Access is entitled to an award of reasonable attorneys' fees and costs for the investigation and discovery of Kelley Drye's violation of the Protective Order and the prosecution of the sanctions motion from December 20, 2017, through June 29, 2020. (Doc. 703 at 21.) The Court uses the familiar "lodestar" method in determining a reasonable fee award, which is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).[6] The party moving for fees has the burden of establishing that the hourly rate(s) and hours expended are reasonable. *See Norman v. Housing Auth. of the City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988).

---

[5] The undersigned reached these numbers by relying on the totals Local Access sets forth in Exhibit A to its Reply, as amended, at Docket Entry 707-1.

[6] Florida has adopted the federal lodestar method for calculating reasonable attorneys' fees. *See e.g.*, *Fla. Patient's Comp. Fund v. Rowe*, 472 So.2d 1145, 1150 (Fla. 1985).

"[A] reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996) (internal quotation marks omitted). In determining whether the requested rate is reasonable, the Court may consider the applicable *Johnson* factors and may rely on its own knowledge and experience. *Norman*, 836 F.2d at 1299–1300, 1303 ("The court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." (internal quotation marks omitted)); *see Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).[7] "The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates," which must be more than just "the affidavit of the attorney performing the work." *Norman*, 836 F.2d at 1299 (citations omitted). Instead, satisfactory evidence generally includes evidence of the rates charged by lawyers in similar circumstances, or opinion evidence of reasonable rates. *Id.*

As for the hours reasonably expended, counsel must exercise proper "billing judgment" and exclude hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at

---

[7] The *Johnson* factors are: 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal services properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee in the community; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and the ability of the attorney; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. *Johnson*, 488 F.2d at 717–19. The Eleventh Circuit has subsequently explained that "district courts may, but are not required to, consider [the *Johnson*] factors since many 'usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate.'" *Mock v. Bell Helicopter Textron, Inc.*, 456 F. App'x 799, 801 (11th Cir. 2012) (unpublished) (quoting *ADA v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359 n.1 (11th Cir. 2006)).

434. In demonstrating that their hours are reasonable, counsel "should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so the district court can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303. Likewise, a party opposing a fee application should submit objections and proof that are specific and reasonably precise. *ACLU of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999). A fee opponent's failure to explain with specificity the particular hours he or she views as excessive, redundant, or otherwise unnecessary is generally fatal. *Scelta v. Delicatessen Support Servs., Inc.*, 203 F. Supp. 2d 1328, 1333 (M.D. Fla. 2002) (citing *Gray v. Lockheed Aeronautical Sys. Co.*, 125 F.3d 1387 (11th Cir. 1997)). "If fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are excessive, redundant, or otherwise unnecessary." *Barnes*, 168 F.3d at 428 (internal quotation marks omitted). When a court finds the number of hours billed to be unreasonably high, it has two choices: it may review each entry and deduct the unreasonable time, or it may reduce the number of hours by an across-the-board cut. *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008).

There is a strong presumption that the lodestar figure is reasonable. *Perdue v. Kenny A. ex rel Winn*, 559 U.S. 542, 553–54 (2010). Nevertheless, the Court may adjust the lodestar to account for the "results obtained." *Hensley*, 461 U.S. at 434. When "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Id.* at 436. Accordingly, the Court has discretion to reduce an award to account for situations where the lodestar figure is unreasonable in light of the limited success obtained. *See Id.* at 436–37.

The parties have submitted competing expert declarations in support of their respective positions on reasonable fees and costs. Local Access submits the Declaration of Robert Thielhelm, Jr., a partner with the law firm of Baker & Hostetler LLP in Orlando, Florida. (Doc. 705-2.) Mr. Theilhelm has over 29 years of civil litigation experience. (*Id.* at 8.) Peerless and Kelley Drye submit the Declaration of Walter Ketcham, Jr., a partner with the law firm of Grower, Ketcham, Eide, Telan & Meltz, P.A., in Orlando, Florida. (Doc. 693-1; Doc. 717-1.) Mr. Ketcham has over 47 years of civil litigation experience. (*Id.* at 5.)

### A.  Reasonable Hourly Rates

The parties disagree over what constitutes reasonable hourly rates for the work performed by some of the attorneys in this case. The chart below details the hourly rates sought by Local Access versus those Peerless and Kelley Drye argue are appropriate:

| Attorney/Paralegal | Local Access's Requested Hourly Rates | Peerless and Kelley Drye's Argued Hourly Rates |
|---|---|---|
| Lee W. Marcus, Esq. | $475 | $275 (2018); $300 (2019) |
| Ernest J. Myers, Esq. | $475 | $275 (2018); $300 (2019) |
| David Sellman, Esq. | $440 | $275 (2018); $300 (2019) |
| Tammy Cohen, Esq., Associate | $365 | $275 (2018); $300 (2019) |
| Daniel L. Hartnett, Esq. | $325 | Not contested |
| Marci L. Iseminger, Esq. | $280 | Not contested |
| David C. Briese, Esq. | $220 | Not contested |
| Sharese Whitesell, Esq., Associate | $220 | Not contested |
| John Hines, Esq., Associate | $180 | Not contested |
| Nancy Ford, Paralegal | $130 | Not contested |

Local Access maintains that the requested hourly rates are reasonable for Attorneys Marcus and Myers, of the law firm Marcus & Myers, P.A., given the experience of these attorneys, the complexity of the issues in the litigation, and the contentiousness of this and previous litigation in which they represented Local Access (and Blitz Telecom Consulting, LLC ("Blitz")) against Peerless, with Kelley Drye as opposing counsel. (Doc. 683 at 7.) Additionally, Local Access

asserts that the requested hourly rates are reasonable for co-counsel Attorneys Sellman and Cohen, of the law firm Sellman Hoff, LLC, due to their first-hand knowledge as counsel for Local Access and its affiliates in prior proceedings. (*Id.* at 8.)

Local Access also utilized attorneys with the law firm of Crary, Huff, Ringgenberg, Hartnett & Storm, P.C. ("Crary Huff"), to assist in researching and briefing specific, limited projects. (Doc. 683 at 10.) To that end, three partners—Mr. Hartnett, Ms. Iseminger, and Mr. Briese —worked on the file, along with associates Sharese Whitesell and John Hines, and paralegal Nancy Ford.

Peerless and Kelley Drye argue that Local Access's requested hourly rates for Attorneys Marcus and Myers are unreasonable because their rates during a similar time period for an issue on appeal to the Eleventh Circuit involving the same parties were lower than what Local Access seeks in this case. (Doc. 693 at 3–4.) Specifically, Peerless and Kelley Drye assert, "Counsel for Local Access admitted to the Eleventh Circuit that the rate Local Access actually pays them for litigation involving this contract was $275 an hour in 2018. (Ketcham Decl. at Ex. C and D.) In this matter, Mr. Marcus and Mr. Myers seek to recover a premium of $475 an hour during this same time frame." (*Id.* at 4.) They assert that even without this admission, $475 per hour is patently too high, citing *Brancato v. Cotrone*, No. 5:18-cv-368-OC-30PRL, 2019 WL 6051432, at *2 (M.D. Fla. Nov. 15, 2019), wherein Magistrate Judge Lammens found that a $425 hourly rate was higher than rates typically awarded in the Middle District, particularly for an attorney with twelve years of experience. (*Id.*) In *Brancato*, Judge Lammens found that a $350 hourly rate was reasonable. *Id.* at *3.

In further support of their argument, Peerless and Kelley Drye attach the Declaration of Attorney Walter Ketcham, who agrees that $300 an hour is the reasonable local rate for Mr. Marcus

and Mr. Myers in 2019 and 2020, which is also what Peerless's local attorneys charged. (Doc. 693-1 at 9–10; Doc. 693-3, -4.) Accordingly, they argue that the Court should award rates of $275 per hour for work performed by Marcus and Myers in 2018 and $300 per hour for work performed in 2019, and apply these same rates to Sellman and Cohen. (Doc. 693 at 7.)

In reply, Mr. Myers and Local Access confirm that Marcus and Myers charged Local Access $475 per hour *for this litigation* due to the complexity of the issues in this case, their prior litigation history with the client, the anticipated contentiousness of the case, and the pervasive nature of the work that was required of the firm, and that the rate is what Local Access has actually paid. (Doc. 705-3 ¶¶ 26–28; Doc. 705-8 ¶¶ 12–15.) In sur-reply, Peerless and Kelley Drye assert that this "premium" hourly rate for this case is not justified given the similarity of issues and contracts involved in this and prior cases. (Doc. 717 at 12–13.) They assert that a "blended rate" of $325 is the most that should be awarded, particularly because the firms at issue used no junior counsel for tasks such as legal research, fact and cite checking, or initial drafts of briefs. (*Id.* at 13.)

The undersigned concludes that the hourly rates Local Access's counsel charged throughout this case are reasonable and should not be decreased. Local Access's lead counsel, Mr. Marcus and Mr. Myers, are partners at their firm, Marcus & Myers, P.A., and have each practiced law for twenty-seven years. (Doc. 683 at 8.) Moreover, Mr. Sellman is a partner and Mrs. Cohen is an associate at the firm Sellman Hoff, LLC, and have been practicing law in the State of Maryland for 37 years and 35 years, respectively. (Doc. 683 at 8.) Both the undersigned and other judges have awarded rates at similar levels to lawyers of equivalent experience and comparable skill in less complex cases brought in the Orlando Division of the Middle District of Florida. *See Rudakas v. State Farm Mutual Auto. Ins. Co.*, No. 6:18-cv-974-Orl-37EJK, 2020 WL 1640096, at

*2 (M.D. Fla. Apr. 2, 2020) (awarding an hourly rate of $475.00); *Inlet Marina Villas Condominium Assoc., Inc. v. United Specialty In. Co.y*, Case No. 6:17-cv-1337Orl-40DCI, 2019 WL 2720219, at *3–4 (M.D. Fla. June 13, 2019) (awarding hourly rates of $450.00, $350.00, and $250.00 for attorneys litigating insurance disputes in the Orlando Division of the Middle District of Florida). Further, Mr. Marcus and Mr. Myers could not have assigned work to junior attorneys, since it does not appear that they employ any. Similarly, the undersigned finds the submitted rates of Mr. Sellman and Ms. Cohen to be reasonable given their experience.

In sum, Peerless and Kelley Drye have not persuaded me that the rates they contest for these attorneys are unreasonable. Moreover, they have not contested the hourly rates for any other attorneys, or for the paralegal from Crary Huff, who seek fees in this case.[8] Thus, the chart below reflects the hourly rates I recommend for each individual who seeks fees in this case:

| Attorney/Paralegal | Recommended Hourly Rates |
|---|---|
| Lee W. Marcus, Esq. | $475 |
| Ernest J. Myers, Esq. | $475 |
| David Sellman, Esq. | $440 |
| Tammy Cohen, Esq., Associate | $365 |
| Daniel L. Hartnett, Esq. | $325 |
| Marci L. Iseminger, Esq. | $280 |
| David C. Briese, Esq. | $220 |
| Sharese Whitesell, Esq., Associate | $220 |
| John Hines, Esq., Associate | $180 |
| Nancy Ford, Paralegal | $130 |

---

[8] They do assert that the hours billed by this firm are not recoverable (Doc. 693 at 5 n.3)—an argument that the undersigned addresses in Section II.B.4. *infra*.

### B.  Reasonable Hours

The parties *vastly* diverge on what they consider to be a reasonable amount of hours spent litigating the sanctions phase of this case. In its initial Motion, Local Access attached its time sheet records (Docs. 690-3, -7, -12), but did not provide expert testimony on the reasonableness of the time spent.[9] Local Access initially sought approximately 3,704 hours in attorney and paralegal time through January 15, 2020. (*See generally id.*)

Peerless and Kelley Drye then lodged categories of objections to Local Access's time sheets. Specifically, Peerless and Kelley Drye objected to: (1) tasks unrelated to the case or the underlying litigation; (2) insufficient detail about the task being performed; (3) fees for time spent litigating damages; (4) duplicative work; (5) block billing; (6) fees for out-of-state counsel's time traveling to and from Orlando; (7) noncompensable clerical work; (8) work conducted after the Report and Recommendation; and (9) work related to Local Access and its Counsel's breaches of the Protective Order. (Doc. 693 at 6–12.)

Ultimately, Peerless and Kelley Drye assert that Local Access should be compensated only for 404.8 hours of time. (Doc. 693 at 15.) In support, Peerless and Kelley Drye submit a chart grouping the time entries by the nature of the activity or stage of the case, comparing the time actually billed to what Peerless and Kelley Drye assert is a reasonable amount of time billed. (Doc. 693 at 13–14.) Peerless and Kelley Drye believe that this amount is supportable because no compensatory harm to Local Access was at issue, the salient facts were known from the beginning, and Peerless disclosed its conduct, which was the primary consideration for the Court's sanction determination. (Doc. 717 at 1.)

---

[9] Mr. Theilhelm's Declaration was not submitted until Local Access filed its Reply in this case. (Doc. 705-2.)

In its Reply, Local Access withdrew some hours it initially requested and updated its attorneys' hours through June 29, 2020, as allowed by the Court's Order (Doc. 703). (Docs. 705, 707-1.) In its final time sheet summary, Local Access submits that, from December 20, 2017, through June 29, 2020, its attorneys billed a total of 3,660.85 hours in prosecuting Kelley Drye's violation of the Protective Order. (Doc. 707-1 at 3.)[10] In this summary, Local Access seeks the following hours for the attorneys and paralegals that worked on this case:

| Attorney/Paralegal | Local Access's Requested Hours |
|---|---|
| Lee W. Marcus, Esq. | 1386.4 |
| Ernest J. Myers, Esq. | 1120.1 |
| David Sellman, Esq. | 663.0 |
| Tammy Cohen, Esq. | 456.9 |
| Daniel L. Hartnett, Esq. | 2.8 |
| Marci L. Iseminger, Esq.[11] | 50.05 |
| David C. Briese, Esq. | 3.3 |
| Sharese Whitesell, Esq., Associate | 6.75 |
| John Hines, Esq., Associate | 15.3 |
| Nancy Ford, Paralegal | 9.1 |
| **Total** | **3,660.85** |

(*Id.*) The bulk of Peerless and Kelley Drye's objections as to reasonable hours are lodged against the work of Attorneys Marcus, Myers, Sellman, and Cohen.

Local Access then submitted, for the first time, the Declaration of Mr. Thielhelm, who provided an opinion regarding the reasonableness of the hours charged by Local Access's counsel.

---

[10] Jim Finneran's hours, billed via Compliance Support, LLC, were not included in this summary. Mr. Finneran's role in this lawsuit as Local Access's data analyst and paralegal are contested and are addressed in Section III.E.6 *infra*.

[11] The time sheet summary provides initials of the professional working on the file, not the full name. The undersigned therefore assumes that the initials "MLL" correspond to Ms. Iseminger. (Doc. 707-1 at 3.)  It is unclear where Mr. Hartnett's time appears as the only other initials not accounted for the on summary are "DAN." The initials "DLH" do not appear on the timesheets submitted. (*See id.*) However, the undersigned will assume that Mr. Hartnett's time corresponds to the initials DAN, as this is the only other professional for whom Local Access seeks fees.

Confusingly, in his Declaration, attached as Exhibit 2 to Local Access's Reply, he opines that 6,284.9 hours of time is reasonable. (Doc. 705-2.) This total is higher than Local Access's hourly summary submitted at Docket Entry 707-1 and also includes, again for the first time, hours charged by Mr. Finneran, Local Access's data analyst and paralegal. In his Declaration, Mr. Thielhelm breaks down the sanctions phase of this case into 21 smaller phases (Doc. 702-1 at 28–29), setting forth the hours and fees for each. (*Id.* at 39–72.) The time records associated with each phase are attached as exhibits to the Declaration.

Unfortunately, Local Access does not appear to provide an explanation in its Reply as to why it seeks 3,660.85 hours in Exhibit A, while Mr. Thielhelm supports an award of 6,284.9 hours. In its Surreply, Peerless and Kelley Drye also do not discuss why there is such a vast difference in the hours Local Access submits, other than the fact that Mr. Finneran's hours were included for the first time in Mr. Thielhelm's Declaration. Therefore, it falls to the undersigned to determine how best to review and make a recommendation as to a reasonable amount of hours during this sanctions phase. Accordingly, the undersigned will address each of Peerless and Kelley's Drye's stated objections to Local Access's fees, utilizing the phases articulated by Mr. Thielhelm, where helpful, to reach a reasonable hourly fee award for Local Access.

For the reasons set forth below, the undersigned finds that the number of hours Local Access requests is high, but the number set forth by Peerless and Kelley Drye is exceedingly too low. Evaluating the contribution of each individual attorney in this case by line item would require to the Court to wade through reams of time entries reflecting nearly 3,700 hours of work. Such an expenditure of judicial time is impractical. *See Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994) (where the fee motion and supporting papers are voluminous, the court need not engage in an hour-by-hour analysis). Therefore, I recommend that the Court find that an across-the-board cut

in the number of hours is appropriate in the amount set forth below. *See*, *e.g.*, *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1311 (11th Cir. 2001) (finding a total claim of 569.3 hours worked is large enough to relieve the district court from conducting an hour-by-hour analysis of the billing records).

### 1.  Tasks unrelated to the case or the underlying litigation

The Court awarded Local Access "its reasonable attorneys' fees and costs incurred between December 20, 2017, and [June 29, 2020], which relate to the investigation and discovery of Kelley Drye's violation of the Protective Order and the prosecution of th[e] sanctions Motion." (Doc. 703 at 21.) The parties disagree on the scope of the hours that fall within this award. In general, a fee applicant cannot recover for time spent on tasks unrelated to the case. *See, e.g.*, *George v. GTE Directories Corp.*, 114 F. Supp. 2d 1281, 1293 (M.D. Fla. 2000) (finding counsel was not entitled to fees for time spent researching whether she could represent a witness in a separate and unrelated action). Moreover, "a federal court's inherent authority to sanction a litigant for bad-faith conduct by ordering it to pay the other side's legal fees . . . is limited to the fees the innocent party incurred solely because of the misconduct." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1183–84 (2017).  Peerless and Kelley Drye argue that Local Access impermissibly seeks to recover 556.9 hours for work that has "nothing to do with the Sanctions Motions." (Doc. 693 at 6.) Attached as Exhibit 7 to Peerless and Kelley Drye's Response are all time entries that they contend are, on their face, for work unrelated to the sanctions proceedings. (Doc. 693-7.) Exhibit 7 is 72 pages in length and seeks the reduction of 556.90 hours, for a total of $258,480.00. (*Id.*)

Local Access, in response, contends that Exhibit 7 provides no meaningful analysis of why its claimed hours are not awardable. (Doc. 705 at 9–10.) Nevertheless, Local Access asserts that the hours claimed can be broken down into the following three categories: (1) those that resulted

from Peerless and Kelley Drye's violations; (2) those that appear related to the underlying case but would not have been incurred but for the violations; and (3) those are that are unrelated to the violations or would require a lengthy explanation regarding how they relate. (Doc. 705 at 7.) As to the latter two categories, in its Reply, Local Access withdrew its request for those fees in an unspecified amount, referring only generally to Mr. Theilhelm's seventy-five-page Declaration. (Doc. 705 at 11, 12.)

Since Local Access failed to specify in its Motion how it reduced its hourly request, the Court reviewed Exhibit 7 to Peerless and Kelley Drye's Response to determine whether their objections to the attorney hours have merit. Local Access states that the hours (again, in an unspecified amount) it seeks for work falling into category one above appropriately consists of time spent investigating the misconduct, protecting itself from the misuse of its Protected Litigation Materials, and prosecuting the motion for sanctions. (Doc. 705 at 7.) Local Access asks the Court to allow fees for prosecution of the motions for sanctions against *both* Kelley Drye *and* Peerless, even though they were technically separate matters and sanctions against Peerless have not yet been assessed.[12] Local Access asserts that this is only fair because the two-year sanctions phase of this case entailed a single discovery phase. (*Id.* at 7-8.) It also asserts, in the same vein, that there is no feasible way to distinguish between tasks related to the Peerless sanctions motion and those related to the Kelley Drye sanctions motion. (*Id.* at 8.)

In general, the undersigned agrees with Local Access. The time entries Peerless and Kelley Drye contest in Exhibit 7 fall generally within the time frame for which the Court awarded Local Access its fees, and the vast majority of those charges reasonably relate to the prosecution of the sanctions motion. (Doc. 693-7.) Moreover, at this point, there is no reasonable, or non-arbitrary,

---

[12] *See* note 4, *supra.*

way that the undersigned can discern to split an award of attorneys' fees between Peerless and Kelley Drye, should the Court assess such a sanction against Peerless.

### 2.   Insufficient detail about the task being performed

A fee applicant bears the burden of sufficiently describing the tasks for which fees are sought. *Norman*, 836 F.2d at 1303. Peerless and Kelley Drye assert that Local Access seeks recovery for many entries "where the descriptions are so vague that [it] is not even possible to determine whether the work related to Sanctions Motions at all." (Doc. 693 at 6–7.) Other entries might relate to the Sanctions Motions, but are too vague as to the activity being conducted to allow the Court to assess reasonableness and necessity. Peerless and Kelley Drye attach as Exhibit 8 all time entries with descriptions that they contend are either too vague to determine whether they are related to the sanctions proceedings at all, or where the purpose of the activity or task being accomplished is not clear. (Doc. 693-8.) Exhibit 8 is 27 pages in length and seeks the reduction of 223.88 hours, for a total of $99,449.17. (*Id.*)

A review of Exhibit 8 leads the undersigned to conclude that the majority of these time entries, when read in context with the billing statements, are not insufficiently vague. Specifically, the time entries submitted by Attorneys Marcus and Myers do not appear unreasonably vague. However, not all of Peerless and Kelley Drye's objections lack merit. For example, entries such as "Review status; etc." and "Telephone calls, emails, etc." from Mr. Sellman are too vague to be compensable. Thus, the undersigned recommends an across the board fee decrease to compensate for this.

### 3. Fees for time spent litigating damages that were not reasonably incurred

Local Access seeks recovery for time it spent pursuing damages for the violations of the Protective Order—a pursuit that was ultimately abandoned. Peerless and Kelley Drye assert that this effort served only to delay the proceedings, and thus the time spent related to it is not recoverable. (Doc. 693 at 7–9.) They estimate that half of the hours spent preparing for and attending the numerous discovery conferences with Judge Smith are attributable to the withdrawn damages claim. (*Id.* at 9.) Local Access contends that Peerless manipulated it into pursuing this remedy and ultimately "weaponized" discovery in an attempt to obtain client names from Local Access. (Doc. 705 at 12–15.)

The undersigned recognizes that the parties deeply disagree as to whether the hours Local Access spent on this phase of the case are recoverable under the terms of the Court's award of fees. However, Peerless and Kelley Drye do not, in their Response, provide the Court with the number of hours it believes Local Access spent on this portion of the case. Rather, they list categories of time that should be deducted, with no corresponding line items of hours attributable to each. (*See* Doc. 693 at 8–9.) Therefore, this objection fails due to a lack of specificity as to the number of hours to be reduced.

### 4. Duplicative work

Hours that are redundant must be excluded from an award of attorneys' fees. *Hensley*, 461 U.S. at 434. Peerless and Kelley Drye claim that four primary lawyers, along with the lesser involvement of many more, was clearly excessive. (Doc. 693 at 9.) They point to the fact that the attorneys spent 691 hours in conference with each other and 1,048 hours in conference with their client. (Doc. 693-6, -9, -10, -11.) They further assert that the time entries for Crary Huff should all be discounted because additional lawyers were not necessary to litigate this case, and Local Access

should not be permitted to recover for a third firm to assist with legal research. (Doc. 693 at 10–11.) Local Access responds that rarely did it ever have more attorneys attending a deposition or hearing than Peerless, and each of the attorneys made unique contributions. (Doc. 705 at 19.)

Having reviewed the exbibits that Peerless and Kelley Drye assert contain duplicative effort, the undersigned finds that the participation of multiple attorneys at these matters was not unreasonable or excessive. While more than one attorney attended multiple events, including depositions and hearings, the staffing is not unusual for complex litigation such as this. Therefore, the undersigned does not recommend a reduction in hours for duplicative work.

### 5. Block billing

Block billing refers to the practice of including multiple tasks in a single time entry and a reduction for this type of billing is acceptable. *Kearney v. Auto-Owners Ins. Co.*, 713 F. Supp. 2d 1369, 1377–78 (M.D. Fla. 2010). Peerless and Kelley Drye attach as Exhibit 12 to their Response time entries that they contend were block billed. (Doc. 693-12.) It is over 100 pages in length and seeks a reduction of 1,729.08 hours, for a total of $771,051.67. (*Id.*) After reviewing this exhibit, the undersigned believes that the vast majority of these time entries may be meaningfully reviewed for reasonableness despite the arguable use of block billing. Therefore, I do not find that a reduction for block billing is warranted.

### 6. Fees for out-of-state counsel's time traveling to and from Orlando

Peerless and Kelley Drye assert that time for out-of-state attorneys to travel to Orlando, Florida, is not recoverable. (Doc. 693 at 11.) Again, Local Access was entitled to its choice of counsel and has reasonably explained that Sellman Hoff attorneys were involved in this case due to their unique and specific client knowledge. Therefore, upon review, I do not find that the travel time should be reduced.

### 7.   Noncompensable clerical work

"[A] fee applicant is not entitled to compensation at an attorney's rate simply because an attorney undertook tasks which were mundane, clerical or which did not require the full exercise of an attorney's education and judgment." *Norman*, 836 F.2d at 1306. The same is true for paralegals. *Scelta*, 203 F. Supp. 2d at 1334 ("[T]he efforts of a paralegal are recoverable only to the extent the paralegal performs work traditionally done by an attorney. Where that is not the case, paralegal work is viewed as falling within the category of unrecoverable overhead expenses." (internal quotation marks and citation omitted)). Peerless and Kelley Drye have identified in Exhibit 14 to their Response all time entries it contends contain clerical entries for which Local Access should not be compensated. (Doc. 693-14.) It is 48 pages in length and seeks a reduction of 72.63 hours, for a total of $31,040.67. Most of these time entries involve work appropriately performed by attorneys and do not appear to be clerical in nature. Therefore, the undersigned does not find reason to make a reduction for clerical work.

### 8.   Work conducted after the Report and Recommendation

Peerless and Kelley Drye assert in their response that no time after June 21, 2019, is recoverable. (Doc. 693 at 12.) However, they made this assertion before the Court awarded fees to Local Access through June 29, 2020. (Doc. 703 at 21.) Therefore, work through that date is compensable as long as it reasonably related to the issue of sanctions against Kelley Drye.

As a result, Peerless and Kelley Drye now assert in their Surreply that the time Local Access has spent *since* the Report and Recommendation on sanctions is excessive. For example, they assert that the 98.8 hours Local Access seeks for preparing and filing objections to the Report and Recommendation is excessive and that 30 hours should have been more than enough time for Local Access to draft its objections. (Doc. 717 at 10.) Upon consideration, however, the hours

Local Access spent preparing its objections are not unreasonable, and only a slight reduction in hours is merited.

### 9. Work related to Local Access and its Counsel's breaches of the Protective Order

Peerless and Kelley Drye assert that Local Access improperly seeks fees for its own breach(es) of the Protective Order. First, Kelley Drye and Peerless argue that on June 29, 2018, Local Access and Blitz filed a public version of a document with several of their customer names unredacted. (Doc. 693 at 12–13; Doc. 253.) Second, on November 9, 2018, counsel for Local Access and Blitz emailed a copy of Peerless's "Highly Confidential" customer list to Mr. Finneran. (Doc. 693 at 12–13; Doc. 400.) Third, on January 16, 2019, Local Access's counsel filed on the public docket Peerless's "Highly Confidential" information, necessitating more motions and negotiations. (Doc. 693 at 12–13; Doc. 483.) Thus, attached as Exhibit 15 is all time they contend should be excluded, totaling 29.90 hours at an amount of $14,174.50. (Doc. 693-15.)

In response to the first two examples, Local Access asserts that these errors were immediately corrected during the course of litigation and the work performed was reasonably foreseeable. (Doc. 705 at 19.) However, time spent fixing these issues do not appear reasonably related to the prosecution of the sanctions motion. As to the third example, as discussed more fully *infra*, the undersigned finds that while Local Access mistakenly made this error, it was not reasonably related to the sanctions proceedings. Therefore, the undersigned recommends that these fees be disallowed, in the amount of $14,174.50.

### 10. Across-the-Board-Reduction

Having reviewed Peerless and Kelley Drye's individualized objections to Local Access's billed hours and finding some of those objections to have merit, the undersigned finds that an across-the-board reduction is warranted. Local Access has submitted roughly 113 pages of billing

records, and adjusting for the number of entries per page, Peerless and Kelly Drye have challenged roughly 43 pages of those billing records, or approximately 40% of the records. Having carefully reviewed the record, and in light of the findings above, the undersigned concludes that a 15% reduction of Local Access's billed hours is appropriate, which reasonably accounts for Peerless and Kelley Drye's meritorious objections.

### C.  Lodestar and Adjustments Thereto

Considering the above recommendations, the lodestar in this case is $1,419,772.00.[13] Next, the Court must consider whether the lodestar should be adjusted for the results obtained.

Peerless and Kelley Drye assert that the lodestar should be further reduced, and the Court is within its discretion to make such a reduction. *Hensley*, 461 U.S. at 434. Peerless and Kelley Drye brazenly argue that the hours Local Access puts forth are too great in number because "the material facts that the Court relied on for its legal rulings were known prior to the discovery phase of the sanctions motion against Kelley Drye." (Doc. 717 at 2.) Peerless and Kelley Drye contend that *all* salient facts were known by July 9, 2018—prior to any discovery being conducted. This attempt to sweep under the rug over two years of sanctions-related litigation is worth little time. If the facts were so obvious and well-known, Peerless and Kelley Drye should have stipulated to them, saving the parties a great deal of money, and everyone—including this Court—an immense amount of time. In sum, Peerless and Kelley Drye have not persuaded the undersigned that there is any reason to reduce the lodestar amount in this case.

---

[13]  This amount corresponds to $1,190,587.50 for Marcus and Meyers, $458,367.50 for Sellman Hoff, and $21,365.00 for Crary Huff, for a total of $1,670,320.00, which the undersigned reduces by 15%.

### D.  Costs Incurred by Local Access's Counsel

The party seeking an award of expenses bears the burden of submitting a request that enables the court to determine what expenses the party incurred and why it is entitled to an award of those expenses. *Loranger*, 10 F.3d at 784. Failure to provide sufficient detail or supporting documentation verifying the expenses incurred can be grounds for denial of those unexplained expenses. *Pelc v. Nowak*, Case No. 8:11-cv-79-T-17TGW, 2013 WL 3771233, at *5 (M.D. Fla. July 17, 2013).Thus, in general, "[t]he party seeking costs must . . . provide sufficient detail and sufficient documentation regarding those costs in order to permit challenges by opposing counsel and meaningful review by the Court." *Id.*

Local Access seeks costs for Marcus & Myers in the amount of $9,038.43, for Sellman Hoff in the amount of $141,583.67, and for Crary Huff in the amount of $1,141.51, for a total cost award of $151,763.61. (Doc. 707-1.) The undersigned addresses each in turn.

#### 1.  Marcus & Myers

Local Access seeks costs for Marcus & Myers in the amount of $9,038.43. (Doc. 707-1.) Local Access submits Marcus & Myers's itemized costs at Docket Entry 690-4. Peerless and Kelley Drye object to some of these costs, asserting that "things like fancy steak dinners . . . are clearly not recoverable." (Doc. 693 at 19.) Peerless and Kelley Drye provide more specific objections to Marcus & Myers's costs in Exhibit 20 to their Response, contending that only $2,058.25 in costs is recoverable. (Doc. 693-20.) Local Access then supplemented the record with receipts, attached to the Declaration of Mr. Myers as Exhibit A to the Reply (Doc. 705-4 at Ex. A), to clarify and support the submitted costs. Peerless and Kelley Drye did not contest these costs in either their Surreply or the Supplement to Mr. Kethcham's opinion. (Docs. 717 at 14, 717-1.) The undersigned recommends that the Court award these costs, as they appear to be reasonable.

### 2. Sellman Hoff

Local Access seeks costs for Sellman Hoff in the amount of $141,583.67 (Doc. 707-1), and it submitted Sellman Hoff's itemized costs at Docket Entry 690-8. Peerless and Kelley Drye object to Sellman Hoff's costs in Exhibit 21 to their Response, contending that only $8,285.96 is recoverable. (Doc. 693-21.)

The bulk of these charges are for "Lexbe," Local Access's ESI vendor it hired to manage the documents the parties exchanged during the sanctions phase, in the amount of $100,582.75. (Doc. 683 at 26; Doc. 693-21.) Peerless and Kelley Drye argue that because Local Access did not submit invoices for Lexbe in its Motion, such costs should immediately be rejected. (Doc. 693 at 18.) In its Reply, Mr. Sellman submitted a Declaration informing the Court, "For the most part, the costs incurred for this service arose out [of] storing and maintaining the 363,478 documents thus far produced in the underlying case for the duration of the two year period, with the remainder of the costs associated with processing, bates stamping, organizing and reporting on documents associated with the prosecution of the sanctions portion of this case." (Doc. 705-6 at 18.) But the only additional information the undersigned has to evaluate the reasonableness of these charges is a few line items on a Sellman Hoff billing statement. (*See* Doc. 705-7 at 5.) This is simply not enough information for the undersigned to assess whether an expense of this magnitude is recoverable. Therefore, because Local Access has failed to provide sufficient documentation for this charge, I recommend that the Court disallow it. *Pelc*, 2013 WL 3771233, at *5.

The other remaining costs sought are for a variety of charges, including PACER fees, transcript fees, and court reporter fees. Sellman Hoff has not provided independent invoices of these charges for the undersigned to review. Without additional information, it is difficult for the Court to conclude that these costs were reasonable.

Finally, Peerless and Kelley Drye object to travel expenses incurred by counsel at Sellman Hoff. (Doc. 693 at 19; Doc. 693-21.) Generally, the Court does not find these expenses excessive or unnecessary. Certainly, Local Access was entitled to its choice of counsel, and travel, in general, to Orlando on several occasions was reasonably connected to the prosecution of the sanctions motions. But again, separate invoices supporting these charges were not submitted. Therefore, the undersigned recommends the Court decline to award Sellman Hoff its travel costs. Therefore, the undersigned recommends the Court award Sellman Hoff the costs to which Peerless and Kelley Drye do not object, totaling $8,285.96.

### 3. Crary Huff

Local Access submits costs for Crary Huff in the amount of $1,141.51. (Doc. 690-12.) While the undersigned has been unable to locate any receipts supporting these charges, the line items on the Crary Huff billing statements appear reasonable and sufficiently descriptive, and Peerless and Kelley Drye have not objected to these costs. Therefore, the undersigned recommends the Court allow the costs.

### 4. Summary of Recommended Costs to be Awarded to Local Access's Counsel

| Firm | Recommended Award |
|------|-------------------|
| Marcus & Myers | $9,038.43 |
| Sellman Hoff | $8,285.96 |
| Crary Huff | $1,141.51 |
| **Total** | **$18,465.90** |

### E. Costs Incurred As "Other Litigation Expenses"

Finally, Local Access seeks an award of costs in the form of other litigation expenses, which it contends were related to Peerless and Kelley Drye's violations of the Protective Order, as follows:

| Other Litigation Expenses | Submitted Amount |
| --- | --- |
| Bunting Digital Forensics, LLC | $3,101.71 |
| ETC Group, LLC | $19,512.50 |
| Law Office of James M. Smith | $7,700.00 |
| Landmark Reporting, Inc. | $2,021.94 |
| CK Reporting | $5,275.50 |
| US Legal Support | $1,857.20 |
| Metchl and Associates | $901.20 |
| Suzanne Trimble | $426.30 |
| Visual Impact Communications, Inc. | $558.75 |
| The Presentation Group | $2,383.00 |
| Compliance Support LLC (Jim Finneran) Fees ($372,824.00) Costs ($16,823.19)  Total for Compliance Support LLC | $389,647.19 |
| D&D Advisors, LLC | $25,550.00 |
| Inforailway, LLC | $62,750.00 |
| PACER | $266.90 |
| Baker & Hostetler | $99,887.00 |
| **Total** | **$621,839.19** |

(Doc. 707-1 at 1–2.) The supporting documentation for these costs, except as to the Baker & Hostetler fee, are attached as Exhibits 13 through 26 to their Motion. (Doc. 690-13 to -26.) Support for the Baker & Hostetler fee is contained in the Declaration of Mr. Thielhelm. (Doc. 705-2 at 74.)

In general, Local Access asserts that all of these costs are recoverable, relying on declarations of their counsel and Mr. Thielhelm in support. Peerless and Kelley Drye object, at least in part, to every request for costs except as to Landmark Reporting, Inc. ($2,021.94), Metchl and Associates ($901.20), and Suzanne Trimble ($426.30). As these costs are unobjected to and

are otherwise reasonable on their face, the undersigned recommends that the Court award Local Access these fees in full. Otherwise, Peerless and Kelley Drye provide their objections to these litigation expenses in Exhibit 22 to their Response and provide a summary of their objections in Exhibit 23. (Docs. 693-22, -23.) The undersigned addresses each objection in turn.

### 1. Bunting Digital Forensics, LLC

Local Access seeks $3,101.71 in costs for retaining Bunting Digital Forensics, LLC ("Bunting Digital"). (Doc. 690-13.) Mr. Myers avers that these charges were necessitated by "Kelley Drye's unreasonable response to an inadvertent potential disclosure [of documents marked "Highly Confidential"] which never resulted in the documents in question ever being viewed by an unauthorized person." (Doc. 705-4, ¶ 26; *see also* ¶¶ 15–24.) Peerless and Kelley Drye characterize this expense as flowing from Local Access's violation of the Protective Order, because Mr. Myers included (albeit inadvertently) Mr. Finneran in an email that transmitted documents marked Highly Confidential in November 2018. (Doc. 693-22 at 2.) Peerless filed its Motion for Rule to Show Cause and to Conduct Limited Discovery (Doc. 400) following this disclosure, to which Local Access responded (Doc. 412). Local Access retained Bunting Digital to conduct a forensic examination of Mr. Finneran's laptop when Peerless and Kelley Drye would not accept Mr. Finneran's representation that he had not opened the email. Peerless later withdrew its motion. (Doc. 414.)

While this expense arose within the context of the sanctions proceeding, it appears to have been caused by the mistake of Local Access. Therefore, the undersigned concludes that this expense is not related to the "investigation and discovery of Kelley Drye's violation of the Protective Order and the prosecution of th[e] sanctions Motion" (Doc. 703-21), and recommends that the Court disallow this expense.

### 2.  ETC Group, LLC

Local Access seeks $19,512.50 in costs for retaining ETC Group, LLC, as part of Local Access's retention of its expert, David J. Malfara, Sr. (Doc. 690-14.) Peerless and Kelley Drye argue that none of this time should be recoverable because Mr. Malfara was retained to testify regarding Local Access's damages. (Doc. 693-22.) Local Access responds that Peerless and Kelley Drye have mischaracterized Mr. Malfara's role. Mr. Myers attests:

> Mr. Malfara was a rebuttal expert to Kelley Drye's expert, James Webber, generally regarding the telecommunications industry, but with knowledge to testify about CDRs, the use of information contained with CDRs. *See, doc.* 571, p.151. Mr. Malfara prepared a report and provided testimony regarding the proprietary information contained within the CDRs. *Id.* at 151 through 179.

(Doc. 705-4, ¶ 27.) The undersigned accepts Local Access's representations and recommends the Court award these costs.

### 3.  Law Office of James M. Smith

Local Access seeks $7,700.00 for retaining James M. Smith, a consulting expert regarding the telecommunications industry and the effect of telecommunications law on the content and disclosures of the Call Detail Records ("CDR") at issue. (Doc. 690-15.) He assisted Mr. Malfara with telecommunications law. (Doc. 705-4, ¶ 28.) Peerless and Kelley Drye object to the entirety of this request because "Mr. Smith's report expressed no relevant or admissible opinion and was never introduced into the record or otherwise used during the litigation. This cost was unnecessary and excessive." (Doc. 693-22 at 5.) However, the undersigned finds that this cost was incurred in relation to the prosecution of the sanctions motion and, therefore, recommends the Court award these costs.

### 4. CK Reporting, US Legal Support, and Visual Impact Communications, Inc.

Local Access seeks $5,275.50 in costs for CK Reporting, $1,857.20 in costs for US Legal Support, and $558.75 in costs for Visual Impact Communications, Inc. (Docs. 690-17, -18, -21.) Peerless and Kelley Drye contend that these charges are duplicative and are found within the costs sought by Sellman Hoff. (Doc. 693-22 at 6, 7, 8.) Local Access does not contest this argument. (Doc. 705-4, ¶ 29, Doc. 705-6, ¶ 31(f).) Therefore, the undersigned recommends that these expenses not be allowed, as they have been accounted for elsewhere.

### 5. The Presentation Group

Local Access seeks $2,383.00 for costs associated with The Presentation Group, retained as litigation support for the evidentiary hearing in the sanctions proceedings. (Doc. 690-22.) Peerless and Kelley Drye argue this is not recoverable because "the presentation was not used at the hearing." (Doc. 693-22.) Mr. Sellman informs the Court in his Declaration that "The Presentation Group provided trial presentation assistance to Local Access during the KDW sanctions hearing. Services included managing all document presentation during the trial and assisting in the visual display of evidence through electronic media in order assist in the smooth presentation of evidence." (Doc. 705-6, ¶ 31(c).) As this was reasonably related to the prosecution of the sanctions motion against Kelley Drye, the undersigned recommends the cost be awarded.

### 6. Compliance Support LLC

Local Access seeks fees of $372,824.00 and costs of $16,823.19 for charges incurred by Compliance Support, LLC, for work done by James Finneran, which Local Access says was its "data analyst and paralegal." (Doc. 690-23; Doc. 705-2 at 9.) Mr. Finneran charged $145 per hour for litigation support. (Doc. 705-2 at 15.) Mr. Thielhelm attests that this rate is reasonable. (*Id.* at 17.) Peerless and Kelley Drye do not appear to contest Mr. Finneran's hourly rate, but rather his

involvement in the case at all.

They argue that Mr. Finneran did not actually serve as a paralegal, but instead is Local Access's Chief Operating Officer/Compliance Officer, corporate representative, and co-owner of Blitz. (Doc. 693 at 19; Doc. 717 at 13; Doc. 717-1 at 3–5.) They assert that awarding these costs would amount to Local Access being paid to litigate, and they also argue that his invoices lack sufficient detail to support his "litigation support" charges. (*Id.*; *see* Doc. 690-23.) In turn, Local Access refers the Court to the entirety of Mr. Thielhelm's Declaration to support Mr. Finneran's role and charges. (Doc. 705 at 20.) Mr. Thielhelm does not appear to contest Peerless and Kelley Drye's assertion.

Mr. Finneran previously testified before the Court on March 26, 2019 that he was a compliance officer for Local Access. (Doc. 571, 182:1–20.) Local Access offers no case law to support the proposition that a party should recover expenses associated with services provided by its own employee under the veneer of "litigation support." Therefore, the undersigned recommends that the Court disallow this expense.

## 7. D&D Advisors, LLC and Inforailway, LLC

Local Access seeks $25,550.00 in costs for retaining D&D Advisors, LLC ("D&D"), and $62,750.00 in costs for retaining Inforailway, LLC ("Inforailway"). (Docs. 690-24, -25.) Local Access contends it should recover the costs incurred in hiring CDR management vendors during the sanctions phase of the litigation because of Peerless and Kelley Drye's violations of the Protective Order. (Doc. 683 at 26–27.) Peerless and Kelley Drye argue that Local Access has failed to meet its burden in explaining why Local Access, as a Certified Local Exchange Carrier that maintains CDRs in the regular course of business, should have incurred costs for the storage of this data during the litigation. (Doc. 693 at 18.) They also assert that Inforailway is owned by Jim

Hudson, Local Access's Chief Technology Officer. (*Id.*) Local Access does not appear to contest Inforrailway's ownership but replies that these expenses were necessarily incurred because it is not a large telecommunications carrier and thus must use outside vendors to store CDRs. (Doc. 705 at 20.) Moreover, it asserts that Kelley Drye argued to the Court that Local Access had to reproduce a subset of CDRs, which required the compilation of millions of record elements. (Doc. 705-4, ¶ 30.)

Overall, the undersigned concludes that these expenses would not have been incurred, to this extent, by Local Access, if not for the lengthy sanctions proceedings that were necessitated by the conduct of Kelley Drye and Peerless. All of the submitted invoices for D&D and Inforailway are dated during 2018 or 2019, within the period for which the Court awarded costs against Kelley Drye. (Doc. 690-24.) Nevertheless, the same concern that arose with regard to Mr. Finneran arises as to Inforailway, which is owned by Local Access's Chief Technology Officer. Therefore, the undersigned recommends that the Court award only the costs attributable to D&D Advisors, LLC.

### 8.  PACER

Local Access seeks to recover $266.90 in PACER fees incurred during the sanctions phase of the litigation. (Doc. 690-26.) Peerless and Kelley Drye contend that because PACER gives counsel a free copy of each document, PACER charges incurred for extra copies are unnecessary. (Doc. 693-22 at 11.) In any event, the PACER invoices submitted do not include sufficient detail to verify these expenses. Therefore, the undersigned concludes that Local Access has not carried its burden of establishing this charge was reasonably incurred and recommends that the Court disallow it.

### 9.  Baker & Hostetler

Local Access seeks recovery of the cost it expended in retaining Mr. Thielhelm to support its fees and costs request. Local Access submitted his Declaration for the first time in its Reply (Doc. 705-2), following the entry of the Court's Order sanctioning Kelley Drye. Mr. Thielhelm informs the Court that Local Access retained him at the rate of $655 per hour and that he was assisted by his associate, P. Alex Quimby, at the rate of $405 per hour. (*Id.* at 74.) Through July 26, 2020, Mr. Thielhelm expended 81.6 hours and his associate expended 13.8 hours, for a total of $59,037 in fees. (*Id.*) Mr. Thielhelm then estimated that over the course of the coming week, he and his associate would spend another 70 hours, through July 31, 2020, in revising, finalizing, and completing the analysis of the reasonable attorney's fees and costs, which would equate to an additional fee of $40,850.00 and reflect a total fee through July 31, 2020, of $99,887.00. (*Id.*)[14]

Peerless and Kelley Drye argue that the Court's June 29, 2020 Order does not award Local Access its fees incurred in preparing the fee petitions. (Doc. 717 at 10–11.) The undersigned agrees. The Court's June 29, 2020 Order directed the parties to file their fee briefing after her Order issued, and the sanction against Kelley Drye specifically stated that Local Access was to be awarded fees through the date of her Order—June 29, 2020. Therefore, it appears that the Court did not anticipate an award of fees to Local Access for preparing its Motion or the subsequent filings in support thereof. Therefore, the undersigned recommends that the Court decline to award Local Access its cost of $99,887.00 for retaining Mr. Thielhelm.

---

[14]  The Court has not located any billing records submitted by Mr. Theilhelm.

### 10. Summary of Recommended Litigation Expenses to be Awarded

Based on the foregoing, the chart below reflects the total costs for litigation expenses which

the undersigned recommends be awarded to Local Access:

| Other Litigation Expenses | Recommended Amount |
|---|---|
| Bunting Digital Forensics, LLC | $0 |
| ETC Group, LLC | $19,512.50 |
| Law Office of James M. Smith | $7,700.00 |
| Landmark Reporting, Inc. | $2,021.94 |
| CK Reporting | $0 |
| US Legal Support | $0 |
| Metchl and Associates | $901.20 |
| Suzanne Trimble | $426.30 |
| Visual Impact Communications, Inc. | $0 |
| The Presentation Group | $2,383.00 |
| Compliance Support LLC<br>Fees ($372,824.00)<br>Costs ($16,823.19)<br><br>Total for Compliance Support LLC | $0 |
| D&D Advisors, LLC | $25,550.00 |
| Inforailway, LLC | $0 |
| PACER | $0 |
| Baker & Hostetler | $0 |
| **Total** | **$58,494.94** |

III.     **RECOMMENDATION**

Accordingly, I **RESPECTFULLY RECOMMEND** that the Court order Kelley Drye to pay Local Access attorneys' fees in the amount of $1,419,772.00 and costs, including litigation expenses, in the amount of $76,960.84.

**DONE** and **ORDERED** in Orlando, Florida on January 6, 2021.

_____
EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record