IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LOCAL ACCESS, LLC,

    Plaintiff,

v.                                                     Case No. 6:17-cv-236-Orl-78EJK

PEERLESS NETWORK, INC.,

    Defendant.
_____/

**KELLEY DRYE'S RESPONSE IN OPPOSITION
TO LOCAL ACCESS'S OBJECTIONS TO
MAGISTRATE'S REPORT AND RECOMMENDATIONS**

    Kelley Drye & Warren LLP, pursuant to Federal Rule of Civil Procedure 72, respectfully submits its Response in Opposition to Local Access, LLC's Objections to Magistrate Judge Kidd's January 6, 2021 Report and Recommendation. (ECF 722). Not satisfied with the nearly $1.5 million in fees and costs it was awarded, Local Access seeks to re-litigate arguments correctly rejected by the Magistrate and introduce new evidence and arguments it failed to present to the Magistrate, despite multiple opportunities to do so. The objections, based on belated submissions and unmeritorious re-argument, should be overruled.

## BACKGROUND

    On June 29, 2020, the Court awarded Local Access its "reasonable attorneys' fees and costs incurred between December 20, 2017, and the date of th[e] Order, which relate to the investigation and discovery of Kelley Drye's

violation of the Protective Order and the prosecution of th[e] sanctions Motion." (ECF 703 21.) The matter was referred to the Honorable Embry J. Kidd, United States Magistrate Judge, for determination of the amount of reasonable fees and costs that should be awarded.

The parties submitted "thousands of pages of briefing, supporting declarations, and exhibits." (ECF 722 3.) Local Access filed an original brief and a reply. (ECF 683, 705.) Peerless and Kelley Drye filed a response and sur-reply. (ECF 693, 717.) Local Access sought $2,443,922.80 in fees and expenses related to its prosecution of the sanctions motion. (ECF 722 3.) Kelley Drye argued that a much smaller number — less than $200,000 — was appropriate. (ECF 717 16-17.) In the Report and Recommendation, the Magistrate largely agreed with Local Access and awarded it $1,419,772 in fees and costs. (ECF 722 32.) However, the Magistrate correctly recognized that many of the costs sought by Local Access were not properly supported by evidence or case law based on arguments made by Kelley Drye. Local Access now asks this Court to consider new evidence and arguments it failed to submit to the Magistrate.

**STANDARD**

When objections are made to a report and recommendation, the district court employs a de novo standard of review as to those portions to which a proper objection is made. 28 U.S.C. § 636(1)(C). A district court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the

magistrate judge, or may receive further evidence or recommit the matter to the magistrate judge with instructions. *Id.*; Fed. R. Civ. P. 72(b)(3).

For those portions of a Report and Recommendation that have not been objected to, or where the objections reargue points rejected by the magistrate judge, the standard is clear error. Fed. R. Civ. P. 72(b)(3); *Organizacion Miss Am. Latina, Inc.*, No. 16-cv-22225-KMM, 2018 WL 4777167, at *1 (S.D. Fla. Sept. 27, 2018). "This level of review is warranted as parties are not to be afforded a second bite at the apple when they file objections to a R&R." *Id.*

Similarly, the Court may "decline to consider arguments never presented to the magistrate judge and only first made in an objection to the report and recommendation." *Stann v. First Liberty Ins. Corp.*, No. 6:18-cv-1499-Orl-78LRH, 2020 WL 2212939, at *1 (M.D. Fla. May 6, 2020) (citing *Williams v. McNeil*, 557 F.3d 1287, 1291 (11th Cir. 2009)). While courts have discretion to consider new arguments or evidence, "[d]istrict courts strongly disfavor considering arguments not presented to the magistrate judge." *Freese v. Colvin*, No. 8:15-CV-1315-T-27AAS, 2016 WL 6804893, at *1 (M.D. Fla. Nov. 16, 2016). As this Court has recognized, to allow a party to "present new issues, advance new arguments, and save his knockout punch for the second round would undermine the Magistrates Act's purpose, create systemic inefficiency, and reduce the magistrate judge's role to that of a mere dress rehearser." *Stann*, 2020 WL 2212939 at *1.

3

**ARGUMENT**

Local Access objects to four items of costs that were disallowed in the Report and Recommendation. These objections should be overruled because the Magistrate correctly found the costs were not supported by proper evidence or legal authority. While Local Access attempts to belatedly support its positions, Local Access should not be allowed to circumvent its obligation to submit these items to the Magistrate in the first instance. And even if the Court considers this new evidence or argument, none of it requires rejecting the Magistrate's recommendations.

1. **Compliance Support LLC**

Local Access has presented conflicting and evolving descriptions of this cost in its attempt to have it imposed on Kelley Drye. In its original briefing, Local Access sought $413,224.70 related to fees from Compliance Support. (ECF 683 6.) Local Access explained that "Local Access has no employees" and "[c]onsequently, it contracts with Compliance Support to provide litigation management support services." (ECF 683 12.) Local Access explained the tasks performed by Compliance Support as follows: "provided extensive document review and analysis, managed and coordinated all legal assignments, managed document productions, coordinated with Local Access's ESI vendor, attended all hearings which required the presence of a representative, testified at the

4

evidentiary hearing on KDW's misconduct, and provided valuable insight and understanding to Local Access's owners and attorneys." (ECF 683 12-13.)[1]

This original description of Compliance Support's role acknowledged that Compliance Support was a stand-in for a Local Access employee and performed the types of tasks one would expect a client representative overseeing litigation to perform, like reviewing documents, coordinating legal assignments, attending hearings, and providing insight to its attorneys. Local Access neglected to mention that Compliance Support is owned by Jim Finneran, Local Access's Chief Operating Officer, Chief Compliance Officer, corporate representative in the case, and co-owner of Blitz.[2] (ECF 693 21, Ex. 17, Ex. 18, Ex. 19.)

In response, Kelley Drye argued that Local Access was improperly seeking to compensate itself and its employees for litigating, pointing out Mr. Finneran's role at Compliance Support, his relationship to Local Access and Blitz, and his role in the case as a corporate representative. (ECF 693 21.) Kelley Drye also pointed out the lack of any detailed billing records associated with these charges. (*Id.*).

In its reply briefing, Local Access changed course. Now required to admit that the Compliance Support charges were fees paid for services provided by Mr. Finneran, Local Access re-cast Mr. Finneran as a "data analyst and paralegal" who provided "technical, data analysis, and paralegal support services." (705-2

---

[1] Local Access included invoices from Compliance Support LLC with one line item including the hours, rate, and total fee charged. (ECF 690-23.)

[2] Blitz joined in Local Access's Motion for sanctions on October 12, 2018 (ECF 362.)

16-17; 705-6 18). Not only did Local Access completely re-define Mr. Finneran's role, but it ascribed to him an entirely different set of tasks than what it originally claimed. Instead of coordinating legal assignments, attending hearings, and providing insight to attorneys, Mr. Finneran was now alleged to have performed "data analysis," and paralegal functions like "gathering documents," preparing "key chronologies," and "manag[ing] potential exhibits." (ECF 705-2 16-17.)

Local Access also provided new time entries for Mr. Finneran. (ECF 705-2.) These time entries were inserted into a chart rather than included on an original invoice sent to Local Access and it is not clear if they were made contemporaneously or prepared only when the Compliance Support costs were questioned by Kelley Drye. (*Id.*) In any event, Local Access provided no case law to support its position that Mr. Finneran's fees were recoverable, devoting only one sentence in its 23 page response to the issue. (ECF 705 23.)

In its sur-reply, Kelley Drye pointed out Local Access's blatant about-face regarding Mr. Finneran's role. (ECF 717 15-16.) Kelley Drye pointed out that Mr. Finneran is not, in fact, a paralegal. (*Id.*) Instead, he acted as a client representative in the case, including providing testimony on behalf of Local Access at the evidentiary hearing. (*Id.*) Kelley Drye also pointed out that Mr. Finneran testified that he analyzed data for Local Access in his capacity as an officer of Local Access, which is the same task Local Access now claimed he primarily performed in this case. (*Id.*) Thus, whether Mr. Finneran was managing the litigation or analyzing data, he was doing so in his traditional role as an

6

officer of Local Access and as a stand-in for a Local Access employee. (*Id.*) Either way, his fees are not compensable.

In the Report and Recommendation, the Magistrate acknowledged Local Access's claim that Mr. Finneran was a "data analyst and paralegal," but instead credited Kelley Drye's evidence of Mr. Finneran's true role, including Mr. Finneran's own testimony to the court that he was a compliance officer for Local Access. (ECF 722 27-28.) The Magistrate also noted that Local Access failed to provide any legal support for its position that it could "recover expenses associated with services provided by its own employee under the veneer of 'litigation support.'" (*Id.* at 28.)

Now, in its Objections, Local Access takes issue with the Magistrate's conclusion that Mr. Finneran was an employee and submits a new affidavit from Mr. Finneran for consideration. These new arguments and evidence should be rejected. Local Access was well aware that Mr. Finneran's role was at issue in the case, but it failed to submit a declaration for the Magistrate's consideration. It should not be permitted to do so now. *See supra* 3.

Second, even if the Court were to consider the declaration, it does not actually contradict the Magistrate's finding. While Mr. Finneran attests that he is not an employee or owner of Local Access, he does not dispute that he is an officer of Local Access and a co-owner of Blitz. (Doc. 730-1.) Nor does he dispute Local Access's original description of him as a quasi-employee. That Local Access chooses to conduct its business through the use of independent contractors

7

rather than employees does not mean that Mr. Finneran was not acting in the role of an employee when providing "services" through Compliance Support.

Most revealingly, Local Access has never made, and still does not make, any effort to explain why it initially described Mr. Finneran as a stand-in for an employee or why it described his role entirely differently in its original submission. (ECF 683 16-17.) Local Access also ignores that Mr. Finneran was selected by both Local Access and Blitz to serve as its corporate representative for deposition. Of course, corporations do not appoint unaffiliated paralegals to serve as their corporate representatives in a case. Local Access's arguments regarding Mr. Finneran's role are disingenuous and were correctly rejected by the Magistrate.[3]

Finally, Local Access now attempts to *again* re-frame Mr. Finneran's role in its Objections, claiming that he acted as the equivalent to in-house counsel. (ECF 730 4-5.) This argument can and should be summarily rejected because it was never presented to the Magistrate. This argument also lacks merit because Mr. Finneran is not an attorney and is not Local Access's in-house counsel. And even the cases cited by Local Access recognize that in-house counsel's time is only compensable when they are not acting as a liaison with outside counsel. (ECF 730 5.) By Local Access's admission, managing and liaising with outside counsel is

---

[3] In addition, any award of expenses in this category would require the Court to wade through the inconsistent records of Local Access to determine what tasks he was performing and when to determine compensable versus non-compensable work. Although Mr. Finneran's time records were improperly submitted for the first time in Local Access's reply, Kelley Drye submitted specific objections to the time entries as well as objected to them in their entirety. (ECF 717-7.)

exactly what Mr. Finneran did. (ECF 683 16-17.) Local Access's final attempt to re-cast Mr. Finneran in a role that will allow his fees to be recovered is unavailing and should be rejected.

2. **InfoRailway LLC**

Local Access sought reimbursement for $62,750.00 in fees for InfoRailway LLC to "manage, retrieve, load, parse, prepare reports about, and store Local Access CDR data." (ECF 683 13.) Kelley Drye responded that this cost was non-compensable because Local Access was again seeking to pay its own officers for performing their typical tasks. (ECF 693 21.) InfoRailway LLC is owned by Jim Hudson, who Local Access has represented is its Chief Technology Officer. (*Id.*) And since Local Access stores and manages CDRs in the ordinary course of its business, these charges appear to be nothing more than ordinary business costs.

Local Access provided no evidence in rebuttal regarding Mr. Hudson. Instead, it argued only that it chooses to use outside vendors to store and manage its CDRs in its normal business and did so for this litigation as well. While the Magistrate accepted Local Access's argument, he still determined the costs should not be awarded because of Mr. Hudson's role at Local Access. (ECF 722 28-29.)

In its Objections, Local Access now argues for the first time that Jim Hudson is not Local Access's Chief Technology Officer and submitted an affidavit from Mr. Hudson in support. (ECF 730, 5-6; 730-2.) Again, this Court should exercise its discretion to not consider this new evidence. Local Access was aware

9

of the issue regarding Mr. Hudson's role and chose not to challenge it before the Magistrate. (ECF 722 29.) It should not be permitted to do so now.

Second, Local Access's evidence of Jim Hudson's role is unconvincing. Local Access admits that it "previously identified" Mr. Hudson as its Chief Technology Officer, but then argues that "*this was most likely done*" because InfoRailway was Local Access's sole contractor at the time. (ECF 730 6) (emphasis added). Local Access's attempt to wash away the fact that it identified Mr. Hudson as its CTO with conjecture should not be entertained. Local Access represented that Mr. Hudson was its CTO in applications made to government agencies, one of which was sworn to by Local Access's CEO. (*See* Exhibits 1, 2, and 3.) Local Access has failed to fully explain why it was willing to affirm under oath that Mr. Hudson was its CTO if that is not the case. Local Access should be held to its prior statements regarding Mr. Hudson, especially when those statements were not challenged in front of the Magistrate.

And regardless of Mr. Hudson's true role, the evidence submitted by Kelley Drye that was accepted by the Magistrate shows that Mr. Hudson is sufficiently affiliated with Local Access to render the costs associated with him performing tasks that Local Access normally performs not recoverable as sanctions. The Magistrate's recommendation should be upheld.

Finally, even if Mr. Hudson was not affiliated with Local Access, the Court should still disallow the costs because they are typical business costs for Local Access. While the Court credited Local Access's argument that it was required to

produce a subset of CDR's related to the sanctions motion, Local Access has not limited its request to those costs or even identified which costs are associated with that production instead of normal storage and management fees. As a result, these costs are not compensable and should be disallowed regardless of Mr. Hudson's role.

### 3. **Robert Thielhelm**

Local Access requested that the Magistrate award it approximately $100,000 in expert fees for the opinion of Mr. Thielhelm regarding the reasonableness of Local Access's attorneys' fees and costs. (*See* ECF 722 30.) The Magistrate correctly held these fees were outside the scope of the fees and costs awarded as sanctions by the Court. (*Id.*) Local Access objects to that recommendation, arguing that this Court should reconsider its prior limitation and award those costs to Local Access. (730 6-9.)

This request for fees related to Mr. Thielhelm's expert witness work has been mooted and should be rejected. On January 6, 2021, the Magistrate entered a report and recommendation regarding sanctions to be imposed against Peerless. (ECF 724.) In that Report and Recommendation, the Magistrate recommended that the fees associated with Mr. Thielhelm that Local Access seeks here be awarded as sanctions and paid by Peerless. (*Id.* 19-20, 22.) Peerless did not object to that recommendation. As a result, those fees are recoverable against Peerless, and Local Access should not be allowed to recover the same fees from both Peerless and Kelley Drye.

In addition, Local Access does not provide any specific objection to the finding by the Magistrate, but instead asks the Court to reconsider its order awarding sanctions so that Local Access can recover more money from Kelley Drye. Local Access has not provided any good reason for the Court to expand the sanctions award.

4. **Lexbe Electronic Discovery Services**

Local Access objects to the Magistrate's ruling that it failed to properly support its request for fees related to Lexbe Electronic Discovery Services. Again, Local Access does so by attempting to supplement the record with new evidence it failed to submit to the Magistrate. The Court should not consider this new evidence.

In its original filing, Local Access sought fees related to Lexbe. (ECF 683 25-27.) Local Access failed to produce any underlying invoices, which Kelley Drye pointed out in its response. (ECF 693 20.) In its reply, Local Access had its expert explain that Lexbe provided e-discovery services, but no details or invoices were provided. (ECF 705-2 73.) Due to this failure, the Magistrate recommended that the Court disallow the charges. (ECF 722 22.)

Now that the costs have been disallowed, Local Access has submitted the documentation for those charges. (ECF 730-4.) Local Access argues those invoices were inadvertently omitted during the "flurry" of filing, but there is no indication that the invoices were intended to be filed. None of Local Access's briefing or its expert opinion reference any invoices or a summary of invoices.

While Local Access argues the Court may consider new evidence, it does not cite any case where a district court considered evidence not submitted to the Magistrate despite the party's knowledge of the need to submit the evidence and its possession of the evidence at the time.[4] Instead, the weight of the authority is that belated submissions of evidence by the losing party are strongly disfavored and undermine the very purpose of the Magistrates Act. *See Stann*, 2020 WL 2212939, at *1 (declining to "exercise its discretion to hear Plaintiff's arguments after he failed to present his best case in the Motion" to the magistrate); *Aerotek, Inc. v. Thompson*, No. 6:13-cv-1277-Orl-22KRS, 2016 WL 7240050, at *4 (M.D. Fla. Dec. 15, 2016) (declining to consider "additional evidence Defendants first submit[ted] in their objection"); *Freese v. Colvin*, 2016 WL 6804892, at *1; *TMH Med. Servs., LLC v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*, No. 6:17-CV-920-ORL-37DCI, 2020 WL 4188209, at *2, n.2 (M.D. Fla. July 21, 2020). Considering new evidence "at this point would discourage the practice of presenting all possible arguments to the magistrate judge when a matter is referred." *In re Photochromic Lens Antitrust Litig.*, 2014 WL 1338605, at *15 (M.D. Fla. April 3, 2014). For this reason alone, Local Access's objection should be overruled.

Even if the Court were to consider the invoices, they do not support rejecting the Magistrate's recommendation. First, Local Access concedes that the Lexbe charges are for both (1) storage charges associated with hosting data from the underlying litigation and (2) assisting in analytics of such data as it relates to

---

[4] In *J.P.F.D. Inv. Corp. v. United Specialty Ins. Co.*, 322 F. Supp. 3d 1263, 1267 (M.D. Fla. 2018), cited by Local Access, the court actually refused to consider a new argument made for the first time in its objection.

13

the prosecution of the sanctions motion. (ECF 730-3.) The first category of charges should not be allowed because they are not related to Local Access's "prosecution of th[e] sanctions Motion," which are the only costs that are recoverable. (ECF 730 21.) Local Access admits as much, but argues that it was required to pay storage fees while sanctions were litigated. But those costs are simply not within the scope of what the court awarded, nor should they be.

Local Access, not Kelley Drye, requested that the underlying matter be stayed while the sanctions motion proceeded, and Local Access estimated that it would take approximately three to four months to conduct discovery initially. (ECF 286, 7-7-18 Tr. at 20:20-22.) In reality, the parties spent over six months litigating Local Access's and Blitz's damages claims, only to have them withdrawn at the eleventh hour. (*See generally* ECF 500 at 2-12.) It was only after this that the parties began discovery in earnest, with almost all depositions taking place in the last sixty days of discovery. Local Access and Blitz also unnecessarily prolonged these proceedings with their refusals to comply with the Court's valid discovery orders. (*See* ECF 432.) Local Access is responsible for both the stay of the underlying case and the delay in the sanctions phase, making it inappropriate for the Court to broaden its sanctions order to include these costs.

And while costs associated with the sanctions proceedings may be recoverable, Local Access makes no attempt to differentiate between work related to the sanctions motion and work related to the underlying case. Interestingly, it appears that Lexbe did segregate its billing related to the sanctions motion,

14

resulting in invoices of $1,629 and $2,197.50. (ECF 730-3 2-3.) But Local Access chose to not seek reimbursement for those costs for a reason not disclosed or explained. (*Id.*) Instead, Local Access seeks only the approximately $100,000 in costs that relate to the underlying litigation. Those costs should not be awarded despite Local Access' belated production of invoices.

Finally, the invoices themselves do little to resolve the Magistrate's concerns about the ability to determine whether the fees were reasonable. Local Access seeks approximately $71,425.50 in storage fees for its Lexbe database. But it appears that Local Access uses the Lexbe database to store records from multiple cases, with the invoices referencing Case 1, Case 2, Case 3 (which appears to be this case), Blitz v. Peerless,[5] and an unrelated case with T-Mobile. (ECF 730-4 5, 7, 9, 26, 49.) Kelley Drye is not responsible for the fees Local Access pays to store documents for other cases. The invoices also reveal that Local Access's subscription agreement with Lexbe is a term agreement that cannot be canceled, meaning Local Access would be paying these monthly charges regardless of the status of this case. (*Id.* at 4) (describing terms of LEP Subscription-Installment Account). Local Access has not submitted any evidence that it extended its agreement with Lexbe because of Kelley Drye. Local Access also seeks fees from December 2017 even though the case was not stayed until after Local Access filed its motion for sanctions in June 2018, which is merely another example of Local Access's overreach. (*See* ECF 276.)

---

[5] "Blitz v. Peerless" likely refers to an arbitration matter between Blitz and Peerless. (*See* ECF 331 9-7-18 AM Tr. at 20:19-21.)

In relation to the fees for time spent by Lexbe employees, many of the charges for work performed by Lexbe are extremely vague. For example, fees are sought for "complet[ing] propagation of custom coding and then copying of documents from Case 1 to Case 3 as requested by Mr. Finneran." (Doc. 730-4 9.) There is no way for Kelley Drye or the Court to determine what this charge is for and whether it relates to the sanctions motion. This is particularly true for charges prior to the filing of the sanctions motion. There are also charges related to other cases, including archiving old case data. (ECF 730-4 5, 7, 9, 26, 49-50.) Local Access made no attempt to explain any of these fees or describe how they related to the sanctions phase and there is simply not enough information in the invoices to allow Kelley Drye or the Court to determine whether these charges are reasonable or within the scope of the sanctions order.

Not only did Local Access fail to submit any supporting documentation to the Magistrate, but it has still failed to provide sufficient information or analysis of the Lexbe charges to warrant their imposition on Kelley Drye as a sanction. The Court should overrule this objection.

## CONCLUSION

Local Access has not presented any compelling reason to revise the Magistrate's Report and Recommendation, which was far more favorable to Local Access than Kelley Drye. The Magistrate's decisions to disallow the costs discussed above were fully supported by the record and the Magistrate's sound judgment in resolving the parties' competing evidence and arguments should not

16

be disturbed. To the extent Local Access seeks to introduce new evidence and arguments, those should be rejected as undermining the process already completed in front of the Magistrate. Local Access's objections should be overruled, with the Report and Recommendation adopted by the Court.

Dated:  February 3, 2021

>  */s/ Dennis P. Waggoner*
> DENNIS P. WAGGONER
> Florida Bar No: 509426
> dennis.waggoner@hwhlaw.com
> julie.mcdaniel@hwhlaw.com
> JOSHUA C. WEBB
> Florida Bar No: 051679
> josh.webb@hwhlaw.com
> val@hwhlaw.com
> HILL WARD HENDERSON
> 101 E. Kennedy Boulevard, Suite 3700
> Tampa, FL 33602
> Tel: 813-221-3900 / Fax: 813-221-2900
> *Attorneys for Kelley Drye & Warren, LLP*