UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**LOCAL ACCESS, LLC,**

      **Plaintiff,**

v.    Case No: 6:17-cv-236-WWB-EJK

**PEERLESS NETWORK, INC.,**

      **Defendant.**

## ORDER

This cause comes before the Court on the following:

1. Peerless's Motion to Designate CDRs as Highly Confidential (Doc. 934), filed February 27, 2023.

2. Peerless's Motion to Redesignate Discovery Materials (Docs. 937; S-944), filed March 13 and 29, 2023.

Local Access has responded in opposition to both Motions. (Docs. 935, 940.) Accordingly, they are ripe for review.

### I.    CDRs (Doc. 934)

Peerless seeks the Court's permission to designate raw switch records associated with its CDRs as "Highly Confidential" pursuant to the Protective Order (Doc. 44). (Doc. 934 at 1.) Peerless asserts that the raw CDRs contain customer proprietary network information ("CPNI") of thousands of Peerless's customers that do not involve Local Access, and Peerless says it is required to protect such information as required by law, citing 47 U.S.C. § 222(a). (*Id.*) Peerless also states that the raw CDRs

are "competitively sensitive" for Peerless. (*Id.* at 2.)

To protect this information, Local Access submits that its experts will "cull out" from the raw CDRs calls associated with Local Access. (Doc. 935 at 2.) But Local Access asserts the Highly Confidential designation would prevent it from being able to view the data "to guide the experts and their analysis, so the damages calculations are properly completed and supportable by fact witnesses," as it is in the best position to understand its business and damages. (*Id.* at 1.) Local Access also points out that this issue could be entirely avoided if Peerless only produced to Local Access the relevant records. (*Id.* at 2.)

The Court finds that the unculled, raw CDRs should maintain their "Highly Confidential" Designation, which will allow Local Access's experts to cull the data to calls associated with Local Access. (Doc. 44 ¶ 14(d).) Local Access has not specifically stated that its experts would be unable to accomplish this task without its input. Thereafter, the culled, raw CDRs will be designated "Confidential," unless the parties agree otherwise. This will allow Local Access to view the relevant data and guide its experts with their analysis.

## II. Other Discovery Materials (Docs. 937; S-944)

### 1. Outbound Contracts

Peerless asserts that Local Access has overly designated everything related to the outbound contracts (*see, e.g.*, Doc. S-944-1) as "Highly Confidential" or "Confidential," when the outbound contracts require no designation at all. (Doc. 937 at 1.) Peerless asserts that the outbound contracts do not have confidentiality

provisions and would have expired by their own terms already. (*Id.*) Further, Local Access did not designate deposition transcripts of outbound customers as confidential. (*Id.* at 2.) Thus, Peerless requests that these documents lose their confidentiality designations.

Local Access asserts that these emails are entitled to be designated as "Highly Confidential" pursuant to the Protective Order, but that Local Access designated them "Confidential" so that Peerless could see them. (Doc. 940 at 1.) Moreover, Local Access wants the additional protections provided by that designation in the Protective Order, such as preventing Peerless from using the documents for any purpose other than in connection with this case (*Id.* at 1–2.) Given the history between the parties with regard to Protective Order violations, Local Access asserts this designation should be maintained. (*Id.* at 2.) Further, Local Access notes that Peerless continues to designate references to its customers as "Confidential." (*Id.*)

The undersigned is not persuaded by Peerless that the current designations should be removed. Peerless would not necessarily have been granted access to the outbound contracts, regardless of the fact that the contracts do not have confidentiality provisions. Rather, Peerless has access to the outbound contracts by virtue of this litigation. Accordingly, for purposes of this litigation, the outbound contracts are appropriately labeled "Confidential," as defined by the Protective Order. (Doc. 44 ¶ 2.)

### 2. Settlement Emails

Peerless asserts that the March 31, 2017 Settlement Emails (Doc. S-944-2) amended the relevant Homing Tandem Agreement ("HTA") to include an additional term. (Doc. 937 at 2.) But Peerless states that now that the HTA has ceased to be in effect as of March 31, 2022, the Confidentiality term in the HTA does not survive and the Settlement Emails, or at the very least, the additional term, should be made public. (*Id.*)

Local Access argues that the Settlement Emails indicate that the parties would treat the terms of the settlement and all modified terms as Confidential. (Docs. 940 at 2; 944-2 at 3 ¶ 7.) Further, Local Access asserts that the Settlement Emails do not relate or refer to the language in the HTA regarding confidentiality. (Doc. 940 at 2.)

The undersigned finds that the "Confidential" designation of the Settlement Emails should continue to apply, particularly where the Protective Order allows Local Access to designate the information as "Confidential" by its own terms. Additionally, Peerless has not pointed to a provision in the Protective Order that makes the information non-confidential specifically because of its age.

### 3. CDR Summaries

Lastly, Peerless requests that summaries of Local Access's CDRs (Doc. S-944-3) be redesignated from "Highly Confidential" to "Confidential." (Doc. 937 at 2.) Local Access responds that it will agree to a redesignation of summaries of its CDRs if Peerless similarly agrees to a redesignation of Peerless's CDRs. (Doc. 940 at 2–3.) As the CDRs are designated "Highly Confidential" under the terms of the Protective

Order, summaries therefrom retain the same designation. (Doc. 940 at 3 (citing Doc. 44 ¶ 14).)

As the undersigned found *supra*, Peerless's raw CDRs should maintain their "Highly Confidential" Designation until the data is culled by Local Access's expert. The culled, raw CDRs will then be designated "Confidential," unless the parties agree otherwise. Pursuant to the Protective Order, summaries of the data will retain the same designation as the underlying data.

Accordingly, based on the foregoing, it is **ORDERED** as follows:

1. Peerless's Motion to Designate CDRs as Highly Confidential (Doc. 934) is **GRANTED IN PART AND DENIED IN PART**. The unculled, raw CDRs should maintain their "Highly Confidential" Designation, which will allow Local Access's experts to cull the data to calls associated with Local Access. Thereafter, the culled, raw CDRs will then be designated "Confidential," unless the parties agree otherwise.

2. Peerless's Motion to Redesignate Discovery Materials (Docs. 937; S-944) is **GRANTED IN PART AND DENIED IN PART** as follows:

    a. The outbound contracts shall retain their designations.

    b. The Settlement Emails shall retain their designations.

    c. Pursuant to the Protective Order, the CDR Summaries will retain the same designation as the underlying data.

**DONE** and **ORDERED** in Orlando, Florida on April 5, 2023.

_____
EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE